Appellant Dorcal, Inc. appeals from a lower court judgment finding that appellee Xerox Corporation was not guilty of fraud and deceit in the leasing of one Xerox 6500 color copier. We affirm.
 I.
On July 6, 1977, appellant Dorcal, Inc., a graphics design business specializing in commercial advertising and technical artwork, entered into an agreement with appellee Xerox Corporation for the leasing of one Xerox 6500 color copier. Prior to entering this agreement, the principal owners of Dorcal, Dorothy Babb and Carol Frances Allen, were contacted by Butch Patrick, a regional sales representative for Xerox, concerning the availability of the 6500 color copier. At that time, Mrs. Babb and Mrs. Allen had not yet formed Dorcal and were merely in the preliminary stages of establishing their graphics design company. When contacted by Mr. Patrick, they were informed that the Xerox 6500 color copier was a "damn good machine" with multiple applications in their line of work. In addition, Mr. Patrick provided them with a brochure which represented that the 6500 color copier was displacing traditional color processes by providing a rapid, high-quality means of color reproduction. The brochure also delineated various innovative uses of the 6500 color copier in other specialized fields. For example, the brochure represented that the color copier was used by a federal agency to record the progress of *Page 667 
tree diseases by making direct color copies of leaves; by a pharmaceutical firm to make color copies of microdilution plates for lab records; by hospitals to make color enlargements of 35mm color slides of vascular pathology and histology specimens for diagnostic and training purposes; by a prominent jewelry manufacturer to prepare immediate catalog papers by copying actual pieces of jewelry and catalog information on the same sheet; and by a fashion design firm to prepare original designs for softgoods, drapery, floor covering and wallpaper manufacturers. On the basis of these representations, Mrs. Babb and Mrs. Allen, then operating under the informal name of BaCall Graphics, contracted to lease a Xerox 6500 color copier for one year. When their business was subsequently incorporated under the name Dorcal, Inc., this lease agreement became binding on appellant Dorcal.
Under the terms of the lease agreement, Xerox was responsible for servicing the machine while Dorcal was responsible for "general maintenance." In addition, Dorcal agreed to pay a minimum monthly rental charge and certain other specified charges for equipment placement or removal, equipment transportation, accessories and supplies.
Although Dorcal ordered the 6500 color copier for delivery on August 1, 1977, the copier was not delivered and installed until September 29, 1977. From that time until the middle of December 1977, Dorcal experienced only minor problems with the copier and was completely satisfied with the quality of its color reproductions; however, from mid-December 1977 until it ceased using the machine on May 24, 1978, Dorcal encountered repeated difficulties with the operation of the machine. Dorcal became increasingly displeased with the functioning of the color copier, frequently complaining of the appearance of magenta streaks and cyan spots on its color copies. In addition, Dorcal complained of the copier's inability to reproduce certain specific colors and half tones.
In an effort to alleviate these difficulties, Dorcal contacted various representatives of Xerox and requested that the copier either be repaired or replaced. As a result of these requests, Xerox made numerous service calls and had several technical representatives inspect the machine. The frequency of these service calls and inspections, as recorded by Dorcal, varied from every two to fourteen days, with approximately twenty service calls being made over the four-months period extending from February 1st to May 24th, 1978. When Dorcal was never able to achieve a satisfactory servicing of the machine, it ceased using the copier on May 24, 1978.
On September 21, 1978, Dorcal filed a complaint in the Circuit Court of Madison County seeking damages against Xerox for pecuniary injuries allegedly sustained in the leasing of the Xerox 6500 color copier. Specifically, Dorcal sought damages for breach of express warranty, breach of implied warranty, fraud by misrepresentation, fraud by suppression of a material fact, fraud by intentional deceit, willful deceit with intent to induce Dorcal to alter its position, and breach of the lease agreement. Dorcal demanded judgment in the amount of $150,000 for loss of income; loss of extensive advertising expenses; loss of good will and business reputation; loss of current and prospective accounts; and loss of considerable supplies and labor.
In response to Dorcal's complaint, Xerox filed a motion to dismiss which was overruled by the trial court on October 20, 1978. Xerox did not file its answer to the complaint until December 21, 1978, ninety-one days after the filing of the complaint and sixty-two days after the trial court overruled the motion to dismiss. In its answer Xerox entered both general and specific denials and asserted the defense of contributory negligence. In addition, Xerox asserted a compulsory counterclaim seeking damages from Dorcal for breach of the lease agreement and for failure to pay certain fees and charges incurred under the terms of that agreement. *Page 668 
No additional pleadings were filed by the parties until September 18, 1979 when Dorcal filed its answer to Xerox's counterclaim. Prior to that time, on March 27, 1979, Dorcal filed a demand for a jury trial pursuant to Rule 38 (b), ARCP. On September 10, 1979, the trial court granted Xerox's motion to strike the demand as being untimely filed. Dorcal again asserted its demand for a jury trial on November 2, 1979 by filing a motion requesting the trial court to reconsider its decision of September 10th. That motion was overruled by the trial court and the cause proceeded to trial with the trial court hearing evidence ore tenus.
At trial Dorcal offered, among other things, the testimony of seven different customers who contracted with Dorcal for color reproduction services. As a general rule, these individuals testified concerning the poor quality of the color copies produced by the 6500 color copier and the unacceptability of these copies for business purposes. Several of these witnesses also testified as to letters they had written to Dorcal expressing their intent to take their business elsewhere in the future. Dorcal also offered the testimony of Paul Putman, a certified public accountant, who conducted a ratio analysis of Dorcal's business records to determine the extent of lost revenues resulting from the inoperability of the color copier. On the basis of his calculation, which he admitted were purely subjective, Mr. Putman estimated that Dorcal lost revenues in the amount of $17,152.58.
In rebuttal, Xerox presented the testimony of several technical representatives who dealt with Dorcal. Each of these individuals had inspected or serviced the machine on some prior occasion. Each testified that, in their opinion, the color copier was functioning normally at the time they inspected it. In addition, Rebecca Farmer (a color analyst), Ronald D. Ivey (a senior technical representative) and Richard Hamiter (a service technician) individually testified that the major difficulty with the machine appeared to result from Dorcal's constant adjustment of the machine to achieve specific colors. Ms. Farmer stated that, in her opinion, Dorcal's expectations as to the machine's capabilities were much too high.
On June 30, 1980, the trial court entered its final judgment stating that it was of the opinion that neither party was entitled to recover from the other. It, therefore, found in favor of Xerox on Dorcal's complaint and in favor of Dorcal on Xerox's counterclaim. Dorcal now appeals.
 II.
The fundamental issue concerns the trial court's action in striking Dorcal's demand for a jury trial. At the very outset, we recognize the intention of the Alabama Rules of Civil Procedure that nothing abridge the fundamental right to a jury trial as declared by our Constitution and by statute. Rule 38 (a), ARCP; Mobley v. Moore, Ala., 350 So.2d 414 (1977). However, Rule 38 (d), ARCP provides in clear and unambiguous terms that "[t]he failure of a party to serve a demand as required by this rule and to file it as required by Rule 5 (d) constitutes a waiver by him of trial by jury." The formal requisites of this demand are delineated in 38 (b) as follows:
 Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 30 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party, and such demand shall be deemed to be a demand for a struck jury.
The question in this case is whether Dorcal's demand was properly filed within the time limitation established by this rule.
Dorcal contends that its initial demand for a jury trial was timely insofar as it was filed prior to service of the "last pleading" directed to the issues. As authority for this proposition, Dorcal relies heavily on the recent decision ofBaggett v. Sims, Ala., 387 So.2d 792 (1980) wherein this Court held that a demand for a jury trial is effective to compel a jury trial on all issues if made within 30 days after service of a reply to a compulsory counterclaim. Dorcal argues *Page 669 
that since its demand was filed prior to its answer to Xerox's compulsory counterclaim, the trial court erred in striking the demand as being untimely filed. We disagree.
In reviewing the propriety of the trial court's action in striking Dorcal's jury demand, it is imperative that we focus upon the date of service of the parties' respective pleadings. Rule 38 (b) establishes a time limitation for making a jury demand which is entirely dependent upon the date of service of the "last pleading directed to such issue." In Veizaga v.National Board for Respiratory Therapy, 27 FR Serv.2d 426 (N.D.Ill. 1979), the court, construing the comparable federal rule, noted that this rule does not limit the right to demand a jury to nondefaulting parties, and does not require the last pleading directed to the issues to have been timely filed. In this way, Rule 38 (b) has been said to be "unlimited in the generality of its ostensible scope." Christiansen v. InterstateMotor Lines, 20 F.R.D. 105 (D.Neb. 1956) (also construing Rule38 (b), FRCP).
At the time Dorcal filed its original demand, the only pleadings confronting the trial court were Dorcal's complaint and Xerox's answer and compulsory counterclaim. Of these pleadings, Xerox's answer and counterclaim was quite clearly the last pleading directed to the issues. To be sure, Xerox's compulsory counterclaim constituted a pleading to which a responsive pleading was required; however, when Dorcal made its initial demand it had not yet filed its reply to the compulsory counterclaim, and there was no basis for assuming that it would ever do so. By the time Xerox filed its motion to strike the jury demand, 211 days had already elapsed since the filing of its answer. In view of these facts, the trial court could reasonably have concluded that the complaint, answer and counterclaim represented the final pleadings of the parties.
It is well-recognized that where the complaint and answer are the only pleadings directed to the issues, the time for making a jury demand runs from the date of service of the answer. Exparte Reliance Insurance Co., Ala., 380 So.2d 266 (1980); 9 C. Wright and A. Miller, Federal Practice and Procedure § 2320 (1971); 2B W. Barron A. Holtzoff, Federal Practice andProcedure § 878 (1961). An analogous situation exists here where a complaint, answer and compulsory counterclaim have been filed, but the complaining party has failed to reply to the allegations of the counterclaim. Since it is impossible for the trial court to predict whether an additional pleading will eventually be filed in response to the counterclaim, the answer asserting the counterclaim must be considered the "last pleading directed to such issue." The thirty-day limitation must, therefore, run from the date of service of the answer.
In the instant case, Dorcal filed its demand for a jury trial ninety-six days after service of the answer. Under these circumstances, the demand was clearly untimely, cf., Larson v.General Motors Corp., 134 F.2d 450 (2nd Cir. 1943), and potentially subject to being stricken upon motion. Herzig v.Twentieth Century-Fox Corp., 129 F. Supp. 845 (S.D.Cal. 1955);Barker v. Upjohn Co., 263 F. Supp. 985 (S.D.Tex. 1966). In view of the pleadings confronting the trial court, we cannot hold that its action in striking the demand filed 96 days after service of the answer constituted a clear abuse of discretion. By failing to file its demand within thirty days after the answer, Dorcal effectively waived its right to demand a jury.
When Dorcal subsequently filed its belated reply to the compulsory counterclaim, a new "last pleading" was introduced bearing upon Dorcal's right to demand a jury trial. By being permitted to file its reply to the counterclaim 271 days after service of the answer containing it Dorcal effectively extended the time for filing the "last pleading," and thus the time in which to demand a jury. Cf., Dasho v. Susquehanna Corp.,461 F.2d 11 (7th Cir. 1972). This pleading did not, however, have the effect of reviving the former demand. On the basis of the pleadings previously confronting the court, that demand had been properly stricken and was no longer in existence. *Page 670 
Since Dorcal had previously failed to plead or otherwise defend, Xerox could have precluded this additional pleading by securing an entry of default on the counterclaim pursuant to Rule 55 (a), ARCP. The general effect of an entry of default is that of a decree pro confesso or a judgment by nil dicit at common law. 6 Moore's Federal Practice ¶ 55.03[2] at 55-32 (2nd ed. 1976); 10 C. Wright A. Miller, Federal Practice andProcedure § 2681 (1971). Under a decree pro confesso, the defaulting party loses his standing in court, cannot appear in any way, cannot adduce any evidence and cannot be heard at the final hearing. Clifton v. Tomb, 21 F.2d 893 (4th Cir. 1927). By failing to avail itself of this procedure, Xerox permitted Dorcal to file its reply to the compulsory counterclaim, thereby establishing an additional time period within which to demand a jury trial. Pursuant to Baggett v. Sims, supra, a jury demand made within 30 days after service of this reply would have been effective to compel a jury trial on all issues raised by the pleadings.
Nevertheless, Dorcal failed to file a jury demand within 30 days after service of its reply. Instead, on November 2, 1979, 45 days after service of the reply, Dorcal filed a motion requesting the trial court to reconsider its action in striking its original demand. Since we agree that the trial court's former action was appropriate in view of the pleadings then confronting the trial court, this motion was properly overruled. Even if the demand had been reinstated, it would have been made beyond the new 30-day time limit. Having reviewed the entirety of the parties' respective pleadings, we conclude, therefore, that the trial court acted properly in striking Dorcal's request for a jury trial.
 III.
A secondary issue raised by Dorcal concerns the trial court's action in sustaining Xerox's objections to the testimony of James V. Burris, the owner of a photocopying business not a party to the instant case. Like Dorcal, Mr. Burris had leased a Xerox 6500 color copier and had incurred repeated difficulties with his machine. When Dorcal sought to question Mr. Burris concerning these difficulties, the following transpired:
 Q And does your business and has it in the past had the services of a Xerox 6500 Color Copier?
A Yes, it has.
 Q Okay sir. Would you describe the service that you have received on your machine?
 A We have had the machine for just over two years, it's on an annual contract. It's renewed each year. So far we have renewed it. If you want a one word description I would say certainly something less than satisfactory.
 Q Have you had any repeat problems with your machine?
 MR. ANGE: Just for the record we object, it relates to another machine at another place of business, and doesn't seem to me to be material or relevant to this case. And we object on that basis.
 MR. CARTRON: May I respond to that? I am offering it for the purpose of showing intent, scheme or design.
THE COURT: I sustain it.
Q Have you had the machine replaced in the past?
A Yes.
 MR. ANGE: We object to that, Your Honor, whether his was —
THE COURT: Sustained.
As a general rule, the doctrine of res inter alios acta
operates to exclude evidence of acts and declarations of nonparties, or dealings of parties with nonparties, on grounds of irrelevancy. Loftin's Rent-All, Inc. v. Universal Petroleum, Ala.Civ. App., 344 So.2d 781 (1977). This rule is based, in part, upon the presumption that such collateral facts are incapable of affording any reasonable presumption or inference as to the principal matters in dispute. Id. This general rule is subject, however, to the limitation that when one's motion or intent is at issue, his acts, statements and conduct on other occasions which have a bearing upon his motion or intention upon the occasion in question are competent evidence. See generally, 29 Am.Jur.2d Evidence *Page 671 
§ 365 (1967). In fraud cases, where intent, knowledge and scienter constitute essential elements of the offense, evidence of similar frauds and misrepresentations are commonly admissible. Roan v. Smith, 272 Ala. 538, 133 So.2d 224 (1961);Johnson v. Day, 230 Ala. 165, 160 So. 340 (1935); 37 Am.Jur.2dFraud and Deceit § 456 (1968). In passing upon the admissibility of such collateral matters, great latitude must be extended so as to afford the admission of any relevant evidence bearing upon the ultimate issue of fraud. Mid-StateHomes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975).
In the instant case, the trial court sustained Xerox's objection to Mr. Burris's testimony on grounds that the testimony was irrelevant and immaterial. Though we recognize the need to admit any probative evidence, however slight, bearing upon the issue of Xerox's fraud, questions of materiality, relevancy and remoteness rest largely within the discretion of the trial court. Costarides v. Miller, Ala.,374 So.2d 1335 (1979); Knabe v. State, 285 Ala. 321, 231 So.2d 887
(1970). Therefore, its ruling concerning relevancy must not be disturbed on appeal unless such discretion had been grossly abused.
We are not convinced that the trial court acted improperly in sustaining the objection to Mr. Burris's testimony, especially in view of Dorcal's meager offer of proof. In response to Xerox's objection, Dorcal merely stated that it was offering the testimony "for the purpose of showing intent, scheme or design." This offer of proof did not refer to any specific comparisons proposed to be proved through the witness nor was it otherwise specific enough to make its relevancy apparent to the trial court. Redwine v. State, 258 Ala. 196, 61 So.2d 724
(1952). Without more, we hold that the trial court did not abuse its discretion in sustaining the objection.
 IV.
The final two issues raised by Dorcal basically challenge the trial court's conclusion that Xerox was not guilty of any culpable conduct. Dorcal contends that the trial court wholly ignored the legal principles applicable to the evidence. We agree that there was testimony which indicated that Xerox may have misrepresented the capabilities of the color copier; however, there is equally compelling evidence which indicated that Dorcal's difficulties with the Xerox 6500 color copier resulted from operator error and misuse. Likewise, there is evidence that the machine functioned normally, although not within Dorcal's expectations. The trial court, hearing the testimony ore tenus, resolved this conflicting evidence in favor of Xerox. We are simply not persuaded that this decision was palpably erroneous or manifestly unjust.
We, therefore, conclude that the judgment of the lower court is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and SHORES, JJ., concur.