The St. Clair County Board of Education (the Board) brought this action for breach of contract against Gradco, Inc., and its surety, United States Fidelity Guaranty Company (USF 
G). After a non-jury trial, the court awarded $55,254.39 to the Board against both defendants.
Gradco had contracted with the Board to perform landscaping work around the St. Clair County schools. After numerous delays, the Board terminated Gradco's right to proceed and hired another contractor to finish the job. The damages awarded were the increased cost of the new contract, plus liquidated damages based on the length of the delay, minus the retained amount owed to Gradco. Gradco argues that the Board prevented it from curing its breach by not considering a subcontract offer, that by this unreasonable refusal the Board failed to mitigate its damages, and that the liquidated damages provision in the contract imposed a penalty, not damages.
On October 5, 1977, Gradco entered into a contract with the Board whereby Gradco was to improve the sidewalks, curbs, grass, and general appearance of the grounds of the public schools in St. Clair County for $211,540.66. USF G executed a performance bond and a payment bond on Gradco's behalf. The Soil Conservation Service (SCS) of the United States Department of Agriculture had prepared the plans for the work and supplied the form on which the contract between Gradco and the Board was written. SCS employees supervised Gradco's work and progress.
The Board gave Gradco notice to proceed on October 24. The contract called for work to be completed within 208 calendar days but also provided for winter shutdowns, which were not to be counted in the 208 days. Gradco began work in November and worked until the SCS declared a winter shutdown on November 21. The schedule called for Gradco to have performed 23% of the work by that time, but it had only completed 1.5%.
Before resuming in the spring, Gradco submitted a revised construction schedule. By May 27, 1978, Gradco should have finished 31% of the work, but had only finished 5.3%. On June 13, Gradco met with Jimmy Lee, the Board representative, and SCS employees to discuss the schedule. Mike Summers, the president of Gradco, explained that he was having difficulty finding a subcontractor to do the concrete work. The Board and the SCS gave him ten days to submit proposals for how he *Page 367 
could meet the schedule. Gradco sent a letter on June 22 listing steps that it would take to improve progress. Although it made these changes, Gradco continued to fall behind.
The parties held another meeting on August 25. Gradco was told to submit another revised schedule and that its work would be reviewed in another ten days. The SCS informed Gradco that if progress was not satisfactory at that time, Gradco's right to proceed would be terminated. Gradco submitted a revised schedule on August 30. On September 11, it had completed 23.3% of the work. The revised schedule called for completion of 35.8% by that time; the original schedule had called for 76%. On September 13, Jimmy Lee mailed a letter (dated September 12) terminating Gradco's right to proceed. Gradco received this letter on September 15. The Board also sent a copy of the letter to USF G.
In August, Gradco had started talking to Ben Miree of Miree Construction Company about Miree's completing the work under a subcontract. They prepared such a subcontract, and Miree submitted it to the Board for approval by letter dated September 13. Larry McRae, the SCS inspector, had known since September 6 or 7 of Miree's interest in subcontracting the remaining work, but had refused to allow Miree's representatives to inspect the job sites. When Lee received the proposed subcontract, McRae told him not to sign anything and did nothing to ascertain whether Miree would be an acceptable subcontractor.
After terminating Gradco's right to proceed under the contract, the Board sent a letter to six or eight contractors requesting bids on the remaining work. The only bid it received was from Miree. The Board rejected this bid and sent another letter to the same contractors inviting negotiations. Again, Miree was the only bidder. The Board and Miree entered into a contract on January 18, 1979, whereby Miree was to complete the work for $212,726.15. Miree began work in April of that year and finished on January 7, 1980.
The Board filed this action against Gradco and USF G, as surety, on September 2, 1980. After discovery, the parties tried the case without a jury. The trial court entered final judgment for the Board on November 7, 1983, awarding $55,254.39, against both defendants. Gradco and USF G filed a timely notice of appeal to this Court.
The contract between Gradco and the Board gave the Board the right to terminate Gradco's right to proceed with the work if Gradco "fail[ed] to prosecute the work . . . with such diligence as will insure its completion within the time specified in this contract, or any extension thereof. . . ." The contract further provided:
 "If fixed and liquidated damages are provided in the contract and if the Contracting Local Organization [the Board] so terminates the Contractor's right to proceed, the resulting damage will consist of such liquidated damages until such reasonable time as may be required for final completion of the work together with any increased costs occasioned the Contracting Local Organization in completing the work."
The contract provided for liquidated damages in the amount of $83.00 per day, which was the amount the SCS calculated for the pay and expenses of its supervising personnel assigned to the job. The Board had contracted with the SCS for the supervision of this project, and these personnel expenses were part of the consideration the Board had to pay the SCS.
The damages awarded are exactly those calculated by the Board. The Board calculated its increased cost from having Miree complete the job at $52,423.29. It fixed the number of days of delay at 192. Gradco's completion date was November 17, 1978, and the winter shutdown date that year was December 10. The Board added these 24 days of delay to the 168 days that Miree took to complete the contract. Multiplied by $83.00 per day, this amount of delay resulted in $15,936.00 liquidated damages. The total of these two figures is $68,359.29. The Board owed Gradco $13,104.90 at the *Page 368 
time of termination, however, so the net amount of damages was $55,254.39.
The provision of the contract regarding subcontractors includes the following:
 "Work shall not be subcontracted in whole or in part without the prior written approval of the Contracting Officer [Lee]. The request shall be in writing with the name of the proposed subcontractor and a description of the work to be done."
Gradco cites authorities for the proposition that "A contracting party obligates himself to cooperate in the performance of his contract, and the law will not permit him to take advantage of an obstacle to performance which he has created or lies within his power to remove." The actual statement in the cases cited is, "[A] party to a contract who has caused a failure of performance by the other party cannot take advantage of that failure." Dixson v. C. G. Excavating,Inc., 364 So.2d 1160, 1162 (Ala. 1978); Lovoy v. Ratliff,276 Ala. 156, 159 So.2d 857 (1964); Selman v. Bryant, 261 Ala. 53,72 So.2d 704 (1954); World's Exposition Shows, Inc. v. B.P.OElks, No. 148, 237 Ala. 329, 186 So. 721 (1939).
The cited principle does not apply to this case. The Board did not prevent Gradco's performance; it cooperated over a period of eight months or more in allowing Gradco to try to accelerate its performance and to revise the schedule for the remaining work. The Board did not prevent Gradco's performance by refusing to consider Gradco's offer to subcontract the whole project when 76% of the work, but only 65 of the original 208 days, remained. Gradco's obligation was to perform the work, not to find a subcontractor. The Board had no obligation to accept a proposed subcontract in any event, and particularly not after the difficulty it had had with Gradco's performance.
Gradco further argues that the Board should have mitigated its damages by accepting the Miree subcontract. Gradco alleges that under the subcontract the Board would not have paid Miree any more than the remainder of the agreed consideration in Gradco's contract and could have avoided most of the delay in performance. The difficulty with this argument is that the Board had no way of knowing at the time it refused to consider Miree's subcontract that Miree would be the only bidder when the Board renegotiated the contract or that Miree's bid would increase the price by such a substantial amount. The Board might reasonably have decided not to risk accepting Gradco's offered subcontractor, considering, inter alia, that Gradco's principal excuse for delay was its inability to find a good subcontractor to do the concrete work. A party is obligated to mitigate damages only if they are reasonably foreseeable and the effort to avoid them will not entail undue risk. NeumillerFarms, Inc. v. Cornett, 368 So.2d 272 (Ala. 1979).
Finally, Gradco argues that the liquidated damages clause provides a penalty, not payment for damages. It further states that one of the requirements for a liquidated damages provision to be enforceable is that the actual damages are uncertain.Otinger v. Water Works and Sanitary Sewer Board, 278 Ala. 213,177 So.2d 320 (1965); Keeble v. Keeble, 85 Ala. 552, 5 So. 149
(1888). Gradco points out that the liquidated damages were calculated from the wages and expenses of the SCS employees assigned to the job, and argues from this that the actual damages could have been calculated from the number of extra days these persons worked.
The liquidated damages are not objectionable on either of these grounds. First, $83.00 per day of delay on a $212,000.00 contract is not an unreasonable amount. Otinger, supra. Second, the derivation of the figure from the SCS employees' compensation does not invalidate the damages on the grounds that the actual compensation was ascertainable. These figures provided a convenient point of reference and to some degree corresponded to the expense of the Board's having to pay for extra days of these persons' time. To the extent the liquidated damages did not actually *Page 369 
correspond to the expenses for SCS supervision, the difference is attributable to such intangible damages as the inconvenience to the St. Clair County students of having their school grounds in disrepair for an extended time.
USF G has filed a separate brief, but the only separate issue which it raises concerns the letter by which the Board notified USF G of Gradco's termination and gave USF G the opportunity to take over Gradco's performance. USF G argues that it refused to execute the take-over agreement because it would have impaired USF G's rights under its bonds. The letter and the refusal had no effect on USF G's obligation under its bonds, however, and the issue raised presents nothing upon which to reverse the trial court.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES and HOUSTON, JJ., concur.