535 So.2d 98 (1988)
CARNIVAL CRUISE LINES, INC.
v.
Donnie GOODIN.
87-681.
Supreme Court of Alabama.
September 2, 1988.
On Return Following Remand November 4, 1988.
*100 Susan Salonimer Wagner and Patricia Clotfelter of Berkowitz, Lefkovits, Isom & Kushner, Birmingham, for appellant.
Davidson L. Laning of Davis, Knopf, Laning & Goldberg, Birmingham, for appellee.
TORBERT, Chief Justice.
This is an appeal from a judgment based on a jury verdict against Carnival Cruise Lines, Inc. ("Carnival"), in favor of Donnie Goodin.
Donnie Goodin has been afflicted with cerebral palsy since birth. He has been confined to a wheelchair all his life; he has difficulty speaking clearly and in making movements that are routine to those not physically challenged. Since 1984, Mary Slaughter, an attendant provided to Goodin by a state agency, has assisted him on a daily basis.
During the summer of 1985, Goodin and Slaughter made arrangements through a travel agent for a four-day Caribbean cruise with Carnival Cruise Lines, Inc. Goodin made it clear that it was absolutely necessary that the toilet and shower facilities on the cruise ship be accessible to him by wheelchair. The travel agent subsequently assured him that bathrooms would be accessible. Goodin then paid $1308 to the agent to cover the costs of the cruise and round-trip airfare to Miami, the ship's departure point, for himself and Mary Slaughter.
At about the time payment was tendered, Goodin signed an acknowledgment sheet for handicapped passengers, which included special instructions and the caveat that certain cabins and public restrooms would not accommodate a wheelchair. This was due to a raised, four-inch "lip," or step-over, in each entry doorway. Goodin signed another document when he and Slaughter arrived in Miami to begin the cruise. This latter document purported to release Carnival from all responsibility associated with Goodin's physical condition as it affected his use of any facilities aboard ship. This form likewise stated that certain bathrooms were inaccessible by wheelchair.
After the cruise ship, the Carnivale, left port, Goodin and Slaughter discovered that no bathrooms on the ship were accessible by wheelchair. Consequently, Goodin was unable to maneuver his wheelchair to the toilet or into the shower and was unable to use either facility. He was able, however, *101 to use a portable urinal he had brought aboard.
Upon their return home, Goodin and Slaughter wrote Carnival, demanding "financial restitution" for the problems caused Goodin by the inaccessibility of the Carnival's bathrooms. Carnival denied any responsibility for Goodin's inconvenience. Goodin then sued Carnival and the travel agent. The jury found in favor of the travel agent, but awarded Goodin $110,000 against Carnival on his theory of fraud. Carnival timely moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied and Carnival appealed.
At the outset, we note that in order to prevail on a fraud claim, regardless of whether the representations were made mistakenly, willfully, or recklessly, a plaintiff must introduce proof of a false representation concerning a material existing fact which, when relied upon by the plaintiff, proximately caused him damage. Hammond v. City of Gadsden, 493 So.2d 1374, 1377 (Ala.1986); Code of 1975, § 6-5-101. If the evidence establishes an intent to defraud or deceive, the law permits the imposition of punitive damages. American Honda Motor Co. v. Boyd, 475 So.2d 835, 839 (Ala.1985).
In this case, the fraud issue centers solely on the documents sent from Carnival to Goodin stating, essentially, that certain bathrooms were inaccessible by wheelchair. Testimony introduced by Goodin showed that, in fact, no bathrooms aboard the Carnivale were wheelchair-accessible. Carnival argues, however, that its brochure stated only that the Carnivale was one of the cruise line's ships and that certain bathrooms were inaccessible. Because one of Carnival's four cruise ships, the Tropicale, had a few wheelchair-accessible bathrooms, Carnival argues that the representation in the brochure is true. Carnival's contention that its representation that certain bathrooms were inaccessible was true because all bathrooms on three ships and most on the fourth were inaccessible is without merit. Had the representation been that bathrooms on certain ships were not accessible by wheelchair, the result here might be different. We are of the opinion that the jury could have concluded from the evidence that Carnival intentionally made false representations of material fact to Goodin.
Carnival first argues that the document executed by Goodin in Miami effectively released it from all liability. In pertinent part, that document provides:
"I hereby release Carnival Cruise Lines from any and all responsilbility [sic] associated with my physical condition as it relates to my use of any and all facilities aboard their ship.
"I understand that it is required by the line that I am equipped with a portable (collapsible) wheelchair, that certain bathrooms do not accommodate a wheelchair, and that my companion, Mary Slaughter, will assist me as necessary in embarking and debarking the ship and in any other capacity, for the duration of the cruise, and in case of an emergency."
(Emphasis added.) Carnival also perceives that the trial court erred in submitting to the jury the issue of whether the release was effective rather than making that determination as a matter of law.
An unambiguous release, supported by valuable consideration, will be given effect according to the intention of the parties as adjudged by the court from what appears on the face of the document; parol evidence is inadmissible to impeach it. Baker v. Ball, 473 So.2d 1031, 1035 (Ala. 1985); Finley v. Liberty Mut. Ins. Co., 456 So.2d 1065, 1067 (Ala.1984). However, a contract otherwise clear on its face may be ambiguous if collateral matters render its meaning uncertain. Williams v. Nolin, 484 So.2d 428 (Ala.1986); Mass Appraisal Services, Inc. v. Carmichael, 404 So.2d 666 (Ala.1981). In Carmichael, we recounted:
"It is said that `a latent ambiguity arises when the writing on its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain', 32 C.J.S., Evidence, § 961b, p. 915; `that is, an uncertainty which does not appear on the face of the instrument, but which is shown to exist *102 for the first time by matter outside the writing', 20 Am.Jur., Evidence, § 1157, p. 1010. And it is well-established that parol or other extrinsic evidence is admissible to explain or clarify a latent ambiguity."
Carmichael, 404 So.2d at 672. In the instant case, we find that the release was ambiguous in its provision that certain bathrooms would not accommodate a wheelchair. Uncontradicted testimony adduced by Goodin revealed that, in fact, no bathrooms aboard the Carnivale were accessible by wheelchair. Once an ambiguity in a release arises, the determination of its true meaning rests with the finder of fact. We perceive no error in the trial court's submission of this issue to the jury, nor in its refusal to construe "certain bathrooms" as meaning all bathrooms.
Carnival next challenges the trial court's admission into evidence of correspondence between the parties, taking the position that such correspondence amounts to an offer of compromise. In substance, the correspondence consists of Goodin's letter demanding "financial restitution" and Carnival's reply letter advising Goodin that "no adjustment [was] appropriate."
Offers of compromise by one party to another, made before or after the litigation is begun, are inadmissible. Super Valu Stores, Inc. v. Peterson, 506 So. 2d 317 (Ala.1987); Glaze v. Glaze, 477 So. 2d 435 (Ala.Civ.App.1985). This rule eliminates the danger that offers of compromise, if admitted, might imply the strength of one party's case or the weakness of his opponent's. See Gurganus v. Kiker, 286 Ala. 442, 241 So.2d 113 (1970). Here, however, that danger was not present. Carnival simply flatly rejected to pay any restitution to Goodin. Moreover, Carnival made no offer of compromise and did nothing other than deny liability. Cf. Krummenacher Drug Co. v. Chocteau, 296 S.W. 255 (1927) (flat denial of responsibility not an offer of compromise). Because, then, Carnival was not the offerer, it does not enjoy the "privilege" of having any offer excluded; stated alternatively, sound policy disfavors the admission into evidence of offers of compromise or settlement, and no such evidence is admissible against the party making the offer. York v. Chandler, 40 Ala.App. 58, 109 So.2d 921, cert. denied, 268 Ala. 700, 109 So.2d 925 (1959); S. Gard, Jones on Evidence § 13.51 (6th ed. 1972); and Wigmore on Evidence § 1061(c) (Chadbourn rev. 1972).
Carnival also has raised an issue concerning the trial court's action in disallowing any testimony about the absence of any complaints from Carnival's previous passengers confined to wheelchairs or about comment cards sent by handicapped passengers to Carnival relating that they thought the accommodations were excellent. This, coupled with Carnival's assertion that this evidence was directed at the issue of intent, was the entire offer of proof made to the trial court.
As we stated in Dorcal, Inc. v. Xerox Corp., 398 So.2d 665, 671 (Ala.1981), "Though we recognize the need to admit any probative evidence, however slight, bearing upon the issue of ... fraud, questions of materiality, relevancy and remoteness rest largely within the discretion of the trial court" and "its ruling concerning relevancy must not be disturbed on appeal unless such discretion [has] been grossly abused." The meager offer of proof in the instant case did not refer to any specific comparisons proposed to be proved, did not relate whether the same representations involved in the instant case were made to previous passengers, and did not relate the time frame within which the comment cards were received or any length of time during which the company received no complaints. We must then, with nothing more, conclude that the trial court did not grossly abuse its discretion in rejecting the testimony of Carnival's representative on this matter based on the offer of proof presented. Dorcal, 398 So.2d at 671; Redwine v. State, 258 Ala. 196, 61 So.2d 724 (1952).
Carnival next contends that it was prejudiced by the admission of testimony by Mary Slaughter concerning previous statements related to her by Goodin. Carnival preserved the issue as to some of this testimony by objecting to it as hearsay. Goodin himself, however, later testified to the identical statements over no objection. *103 Therefore, no prejudicial error exists, because the same testimony was later admitted without error. Harvey Ragland Co. v. Newton, 268 Ala. 192, 105 So.2d 110 (1958); American Fire & Cas. Co. v. Archie, 409 So.2d 854 (Ala.Civ.App.1981).
The next issue concerns Goodin's mitigation of the damages he suffered. Whether a party has sufficiently mitigated his damages is a question of fact. Generally, an injured party is required to mitigate his damages in a reasonable manner consistent with what an ordinarily prudent person would do in similar circumstances. See Gradco, Inc. v. St. Clair County Bd. of Educ., 477 So.2d 365 (Ala. 1985); Merrill v. Badgett, 385 So.2d 1316 (Ala.Civ.App.), writ denied, Ex parte Merrill, 385 So.2d 1319 (Ala.1980); Restatement (Second) of Torts § 918 comments c, d (1979). If mitigation would impose upon the injured party undue risk, expense, humiliation, or indignity, however, the duty to mitigate will not attach. See Neumiller Farms, Inc. v. Cornett, 368 So.2d 272 (Ala. 1979); 22 Am.Jur.2d Damages §§ 527-28 (1988).
In the instant case, Carnival contends that Goodin failed to properly mitigate his damages. Carnival argues that because Goodin refused to permit Slaughter or any of the ship's stewards to assist him to the bathroom facilities, any damages he received should have been accordingly diminished. We disagree. Goodin's and Slaughter's testimony revealed that Goodin became embarrassed and frustrated when Slaughter attempted to maneuver Goodin into the bathroom; that Goodin did not wish to be seen under those circumstances by strangers; and that emotional upset caused Goodin's limbs to jerk involuntarily. Further, Goodin did bring onto the ship a portable urinal. Due to the delicate matter of Goodin's dignity involved with this situation, we conclude that Goodin's conduct was not unreasonable. There was ample evidence from which the jury could conclude that, in light of the potential for embarrassment, Goodin's actions were sufficient to warrant no reduction of damages.
Carnival argues that there was no evidence of an intent to defraud Goodin and, therefore, that punitive damages were unavailable. Carnival also argues that, absent malicious conduct or an intent to injure on its part, the imposition of punitive damages was unwarranted.
As Justice Jones pointed out in his concurring opinion in Ex parte Lewis, 416 So.2d 410, 411 (Ala.1982), "Undoubtedly, and understandably, this Court's decisions in several recent fraud cases of the `intent to deceive' species have [been misleading] with respect to the elements of the offense necessary for the imposition of punitive damages." Cf. Comment, Punitive Damages and Fraud: Alabama's Deceptive Standard, 35 Ala.L.Rev. 101 (1984). We have recently attempted to resolve the conflicting standards, however, and will reiterate our conclusion here.
In American Honda Motor Co. v. Boyd, 475 So.2d 835 (Ala.1985), a majority of this Court announced what is the present standard for the imposition of punitive damages in intentional fraud cases. This Court rejected the notion that incidents of grossness, oppressiveness, and maliciousness are elements to be superimposed upon the statutory requisite of intent to deceive in order to warrant punitive damages. Rather, "`[i]t is the finding of intent to deceive, which must be based upon the initial finding of knowledge of the falsity of the material representation, that triggers the discretionary power of the factfinder to award punitive damages.'" American Honda, 475 So.2d at 838 (citation omitted).
American Honda established the conclusive inquiry regarding the propriety of awarding punitive damages on a given occasion: an initial finding of a material representation known to be false, coupled with an intent to deceive or defraud. The analysis proceeds without regard to grossness, oppressiveness, or maliciousness.
Applying the American Honda analysis to the case at bar, we review the punitive damages issue. The travel agent's knowledge that Goodin was confined to a wheelchair and that he was concerned with the bathroom accommodations on Carnival's cruise ship must be imputed to Carnival. Carnival subsequently, on at least two occasions, represented to Goodin that certain *104 bathrooms aboard its ship were not accessible by wheelchair when, in fact, none aboard the Carnivale were so accessible. We conclude from this that there was ample evidence from which the jury could have concluded that, first, Carnival knew its statements were false and, second, Carnival intended to defraud or deceive Goodin by inducing his reliance on its misrepresentations. Since each tier of American Honda is satisfied, Carnival's conduct was properly susceptible to the imposition of punitive damages.
Finally, Carnival argues that the trial court erred by failing to make findings of fact to support the denial of Carnival's new trial motion based upon the excessiveness of the verdict. We agree. In Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), we held that a trial court must set forth its reasons for interfering with a jury verdict, or refusing to so interfere, when the issue of excessiveness of damages is properly raised. The reason for the rule is to assist the appellate courts in determining whether the verdict could have been the product of passion, bias, or other improper motive. Hammond, 493 So.2d at 1378. Here, Carnival maintains that the amount of the verdict is the product of the jury's sympathy for or bias favoring Goodin.
Accordingly, this cause is remanded for the entry of an order consistent with the Hammond decision. The trial court in its discretion may order a further hearing to reconsider the claim that the verdict is excessive. In any event, it is to state on the record its reasons for any action it takes and to report its findings and conclusions to this Court within 28 days of the date of the release of this opinion.
REMANDED.
MADDOX, ALMON, BEATTY and HOUSTON, JJ., concur.

ON RETURN FOLLOWING REMAND
TORBERT, Chief Justice.
On September 2, 1988, we remanded this case to the circuit court for the entry of an order setting forth that court's reasons for upholding the jury's verdict; our remand was occasioned by the lack of such an order when the trial court denied the appellant's motion for new trial based upon the ground that the damages were excessive.
The circuit court has responded to the remand and has concluded, based upon its firsthand observation of the jury and of the proceedings, that the verdict was not based on improper motivations of bias, prejudice, or emotion. The trial court has further concluded that the amount of the verdict was not excessive in light of the evidence introduced during the course of the proceedings. Finally, the trial court has concluded that the verdict does not shock its conscience.
Based upon the findings of the trial court and upon a fresh review of the record, which does not contradict those findings, we hold that the court below did not err in denying the appellant's motion for new trial.
Accordingly, the judgment of the trial court denying the appellant's motion for new trial and upholding the verdict of the jury is affirmed.
AFFIRMED.
MADDOX, ALMON, BEATTY and HOUSTON, JJ., concur.