ALMON, Justice.
These appeals are from a judgment rendered on a jury verdict in favor of Abeta Travel Service, Inc. (“Abeta”), and against Ocean Cruise Lines, Inc. (“OCL”), for $250,000.
OCL is the general sales agent in the United States for OCL, S.A., a Panamanian corporation. Abeta is a travel agency based in Mobile. Following talks with OCL’s group reservations manager, Abeta entered into a contract entitled “group space confirmation” on February 11, 1987. That contract gave Abeta the right to sell up to 50 spaces on an OCL cruise bound for Scandinavia. The contract stated that the reserved cabins would be considered “sold and assigned” upon receipt of a $250 deposit for each passenger and a list of the passengers’ names. After entering into this agreement, Abeta entered into negotiations with Helen Thompson, a Mobile resident. Ms. Thompson had dealt with Abeta frequently in the past, arranging tours similar to the cruise to Scandinavia. Abeta and Thompson gathered a group of 19 passengers, and on April 9, 1987, Abeta mailed a check to OCL to cover the required deposit. Ms. Thompson, as tour guide, was to receive free passage. This check was negotiated by OCL on April 13, 1987.
Abeta produced evidence tending to show that OCL was engaged in a fraudulent booking system that discriminated against tour groups. According to Abeta, OCL would accept deposits from tour groups and promise them reservations, while never actually booking the tour groups as passengers. Instead, these tour groups would be placed on an alternate list, or “ghost ship.” Because dealing with tour groups was not as lucrative as dealing with individual passengers, OCL would attempt to book as *207 many individual passengers as possible and then attempt to find space for the tour groups. If no space was available, the tour group would be cancelled.
Abeta contends that OCL’s dual booking system was never revealed to Abeta. Abe-ta maintains that OCL never disclosed its failure to book the Thompson group, despite frequent phone conversations between Abeta and OCL’s group reservations manager. To the contrary, Abeta was reassured that the passengers’ reservations had been confirmed. Abeta contends that OCL was aware that the tour group’s chance of securing passage was slim and that its reservations were only tentative, but that OCL actively suppressed this information in order to keep the tour group on standby in order to fill any vacant cabins.
Abeta was not notified of the tour group’s cancellation until seven days before the cruise’s scheduled departure. After receiving this news, the owner of Abeta was able to secure passage for 13 members of the tour group on a different cruise line. The other members of the group were unable to go on this other cruise, because it had a later departure date. To maintain good relations with its customers and to preserve its business reputation, Abeta paid the additional costs of the second, more expensive cruise. Upon learning that Abeta had secured alternative passage for the tour group, OCL presented proposals for cruises to the Orient, Alaska, Canada, and South America at reduced rates. OCL asked Abeta to relate these proposals to the passengers. Abeta contends that it presented those proposals to Ms. Thompson, the only member of the group with whom it had communicated.
Abeta filed its complaint against OCL on July 30, 1987, alleging that OCL had: (1) breached the group space confirmation contract, (2) been negligent in overbooking the cruise, and (3) misrepresented that the cabin spaces had been reserved for the Thompson group. Abeta later amended its complaint, adding charges of wanton misconduct and fraudulent concealment.[1] Abeta asked for compensatory damages for expenses incurred in arranging the replacement cruise, lost commissions, and loss of interest on working capital. It also claimed punitive damages.
Following OCL’s failure to answer Abe-ta’s complaint, Abeta moved for a default judgment. This motion was granted, but the default judgment was later set aside, for reasons explained below. Following a trial on the merits, the trial judge directed a verdict for Abeta on the breach of contract claim, and the jury returned a verdict for Abeta on the tort claims. The trial judge entered a judgment in the amount of $250,000. It is from this judgment that OCL appeals. Abeta cross-appeals the trial court’s order setting aside the default judgment.

Exclusion of Evidence of Alternative Trip Proposals

Following a motion in limine by Abeta, the trial judge entered an order excluding any evidence of alternative trip proposals made by OCL. OCL maintained that these proposals represented a viable way of mitigating any damages suffered by Abeta or the passengers, and sought to introduce evidence that Abeta never communicated these proposals to the passengers. The trial judge ruled that these proposals were either an attempt by OCL to renegotiate the contract it had breached with Abeta or were offers of compromise. Offers of compromise are generally inadmissible. Super Valu Stores, Inc. v. Peterson, 506 So.2d 317, 321 (Ala.1987). This rule is justified on the policy grounds that extrajudicial settlements are to be encouraged. Indemnity Co. of America v. Pugh, 222 Ala. 251, 132 So. 165, 167 (1931).
OCL argues that the exclusion of the evidence was error for a number of reasons. Three of the four reasons presented concerned the trial judge’s characterization of the evidence as an offer of compromise.
*208 First, OCL contends that the proposals were not offers of compromise because, it says, they were not contingent on the condition that Abeta waive or compromise any claims it had against OCL. Instead, OCL contends that it merely wanted Abeta to communicate these proposals to the passengers. However, this Court has held that the exclusion also applies to evidence of a compromise or an offer to compromise with a third party whose claim also arose out of the transaction or occurrence under litigation. Chandler v. Owens, 235 Ala. 356, 179 So. 256, 259 (1938). The passengers were such third parties, and the trial court could permissibly have viewed OCL’s proposals as an attempt to forestall or prevent suit by the passengers. Those proposals therefore fall within the ambit of this rule.
Second, OCL argues that the excluded evidence was not being offered to show the relative strength or weakness of either party’s case, which, it contends, is the sole reason for the inadmissibility of offers of compromise. This argument is without merit. The appellate courts of this state have also held that offers of compromise are not admissible as evidence of a party’s good faith attempt to settle a dispute. Glaze v. Glaze, 477 So.2d 435, 436 (Ala.Civ.App.1985).
OCL’s third argument is that Abeta, not being the party making the offer, could not enjoy the “privilege” of having the offer excluded. OCL cites Carnival Cruise Lines, Inc. v. Goodin, 535 So.2d 98 (Ala.1988), as support for its position. This Court finds OCL’s reliance on Carnival to be misplaced. In Carnival, the plaintiff had made a preliminary demand for payment, which the defendant refused. Carnival, supra, at 102. The plaintiff introduced evidence of the demand and refusal at trial, and the defendant appealed. This Court held that the evidence concerned a demand for payment, not an offer of compromise, and was therefore admissible. Carnival, supra, at 102. In addition, our courts have held that the exclusion of evidence of offers of compromise applies when the evidence is presented on the of-feror’s behalf, as well as when it is presented against him. Yeager v. Hurt, 433 So.2d 1176, 1181 (Ala.1983); Flournoy v. State, 30 Ala.App. 154, 2 So.2d 329, 330 (1941). Other jurisdictions have also held that the offeree is entitled to invoke the rule excluding offers of compromise. Davidson v. American Fitness Centers, Inc. 171 Ga.App. 691, 320 S.E.2d 824, 826 (1984); Frisella v. Reserve Life Ins. Co. of Dallas, 583 S.W.2d 728, 734 (Mo.App.1979); Vinyard v. Herman, 578 S.W.2d 938, 942 (Mo.App.1979).
The final issue to be resolved concerning the admissibility of the alternative trip proposals involves the trial judge’s characterization of these proposals as attempts to renegotiate a breached contract. In its brief, Abeta cites Gradco, Inc. v. St. Clair County Bd. of Ed., 477 So.2d 365 (Ala.1985), in which this Court held that a non-breaching party would not be compelled to mitigate damages if to do so would entail undue risk. Gradco, supra, at 368. It is clear from the record that the trial judge considered the new proposals by OCL as being offered with no greater assurances of performance than were offered with the original booking to Scandinavia. Because of the speculative nature of these proposals, and because none of the proposed alternative cruises was destined for Scandinavia, Abeta was under no duty to accept them. Nor was it under a duty to communicate these proposals to the passengers in an effort to mitigate damages caused by OCL’s breach of contract and misfeasance.

Denial of OCL’s Motion for Directed Verdict

OCL argues that the trial court erred in refusing to direct a verdict in its favor on all the counts in Abeta’s complaint. It contends that Abeta was merely an agent for the passengers, and therefore lacked standing to bring an action based on their loss or injury. OCL also argues that Abeta was not the real party in interest and, therefore, that to allow it to press its claims against OCL would violate A.R. Civ.P., Rule 17(a), by exposing OCL to potential multiple liability. While it is true that OCL might be liable to the passengers of the Thompson group, as well as to Abe- *209 ta, that predicament is the result of OCL’s acts, not those of Abeta or the trial court.
This Court has clarified the meaning of the term “real party in interest”:
“ ‘The meaning and object of the real party in interest provision [of Rule 17] would be more accurately expressed if it read:
“ ‘An action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced.’ ”
Ex parte Howell, 447 So.2d 661, 665 (Ala.1984), quoting 3A J. Moore, Federal Practice, § 17.02 at 53 (2d ed. 1953) (emphasis in Moore).
In the instant case, the group space confirmation agreement between OCL and Abeta was a contract that conferred rights and imposed obligations on both parties. Both were obligated to act in good faith, and both had the right to seek a remedy at law for breaches of the contract. It is true that Abeta was acting as an agent or representative for the passengers, but it is also true that the agreement between OCL and Abeta constituted a contract separate and distinct from the contracts between OCL and the passengers. The trial court properly denied OCL’s motion for a directed verdict based on lack of standing.
OCL also moved for a directed verdict on the issue of punitive damages. In the motion presented to the trial court, OCL maintained that punitive damages would be improper because, it argued, Abe-ta had not proven all of the elements of its ease, and alternatively, that the evidence did not support an award of punitive damages. On appeal OCL argues that Ala. Code 1975, § 6-11-27 (Supp.1988), would prohibit the recovery of punitive damages by Abeta. Although OCL did not bring this statute to the trial court’s attention, it contends that the issue has been preserved for review because Alabama courts take judicial knowledge of public statutes. Rayburn v. State, 366 So.2d 708, 710 (Ala.1979). However, no allegations were made in the trial court that the punitive damages award in this case violated § 6-11-27; therefore that issue is raised for the first time on appeal. This Court will not review issues or arguments that are not first presented to the trial court. Bevill v. Owen, 364 So.2d 1201, 1203 (Ala.1979). This Court cannot put a trial court in error in regard to a matter that, according to the record, was neither presented to nor decided by it. Defore v. Bourjois, Inc., 268 Ala. 228, 105 So.2d 846, 847 (1958).
OCL also contends that the trial court erred in denying its motion for a directed verdict on count four of Abeta’s complaint, which alleged wanton misconduct. OCL contends that its actions amounted only to nonfeasance, not misfeasance. A motion for directed verdict tests the sufficiency of the evidence presented, and it should be denied if there is any conflict in the evidence for the jury to decide. McLarty v. Wright, 56 Ala.App. 346, 321 So.2d 687, 689 (Ala.Civ.App.1975). This Court is satisfied that in this case there was sufficient evidence of wanton misconduct to warrant consideration by the jury. OCL’s motion for directed verdict was properly denied.

Denial of OCL’s Motion for a New Trial

OCL moved for a new trial, arguing that the award of punitive damages was contrary to law. On appeal OCL contends that the award violated § 6-11-27. Although OCL did not raise that statute at trial, it contends that it has preserved this issue for review by alleging in its motion that the award was contrary to law, because, it says, the trial court should have taken judicial notice of the relevant law. This argument is without merit. A party cannot preserve an issue for review by making a blanket allegation that an award is contrary to the laws of this state. Although a party is not required to specifically plead a public statute for a court to notice it, Mobile City Lines v. Orr, 253 Ala. 528, 45 So.2d 766, 769 (1950), it is incumbent upon the parties to clearly point out how an award is in conflict with the law. Parties to an action cannot expect the trial court to prosecute or to defend their case.
*210 OCL also argues that the award of punitive damages was against the weight of the evidence. This Court finds no grounds for reversal on that basis. The verdict of a jury is presumed to be correct and will not be reversed unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it is wrong and unjust. Shelby County v. Oldham, 264 Ala. 626, 627, 89 So.2d 106, 107 (1956).

Abeta’s Motion for Directed Verdict

OCL contends that the trial court erred in granting Abeta’s motion for a directed verdict on the breach of contract claim. It maintains that the trial judge had no basis for determining that the group space confirmation was the entire contract between the parties. OCL contends that the “passenger ticket contract” and the brochure describing the trip are referred to in the group space confirmation agreement and therefore became part of the contract between OCL and Abeta. The pertinent language in the group space confirmation is set out below:
“Deposit and Review Procedures: ... Cancellation penalties are as described in the applicable OCL brochure.”
The referenced brochure contains a section entitled “Responsibilities,” wherein OCL, S.A., not the appellant OCL, Inc., disclaims any responsibility in the event of cancellation, beyond refunding all payments made. All of the language in this section of the brochure concerns OCL’s liability to its passengers. No attempt is made to disclaim or limit liability to parties such as Abeta, who although not passengers, suffer substantial injury from the cancellation of reserved space. In this action Abeta is not attempting to vindicate the rights of the passengers; rather, it is suing to enforce its own rights. Therefore the “Responsibilities” section of the OCL, S.A. brochure is not applicable to the contract between OCL and Abeta. In addition, OCL’s lawyer acknowledged at trial that the brochure did not relieve OCL of its duties to Abeta or limit its liability. The pertinent portion of the transcript contains the following exchange:
“THE COURT: Well, this just lets OCL, S.A. off the hook.
“MR. GOTTLIEB: That’s correct.
“THE COURT: Is there anything in here, Bob and Bill, that lets OCL, Inc., off the hook?
“MR. GOTTLIEB: No, Your Honor. It does not reference OCL, Inc., as such. It references OCL, S.A.
“THE COURT: I see.”
Soon after this exchange, the trial judge entered a directed verdict in favor of Abeta on the breach of contract claim. By conceding to the trial court that the brochure did not protect it from liability, OCL has waived any right to raise the issue of the brochure’s applicability. OCL also argues that the passenger ticket contract limits OCL’s liability for cancellation to refunding any payments made. However, the group space confirmation does not refer to, or attempt to incorporate, the passenger ticket contract, and, as the trial judge noted, no tickets were ever issued. In addition, all limitations of liability contained in the passenger ticket contract concern potential liability to passengers, not to third parties such as Abeta:
“Art. I—Non-Transferability—This Passage Contract is valid only for the passenger or passengers for whom it is issued for the date and vessel indicated, or any substitute vessel, and is not transferable.”
It is clear from the language of both the brochure and the passenger ticket contract that those documents did not affect the relationship between OCL and Abeta. Therefore, the trial judge’s determination that the group space confirmation represented ' the entire contract between OCL and Abeta was correct, and the directed verdict in favor of Abeta on the breach of contract claim was not error.
Finally, OCL asks this Court to reassess the award of punitive damages under the guidelines set out in Ala.Code 1975, § 6-11-24 (Supp.1988). That statute provides:
*211 “(a) On appeal, no presumption of correctness shall apply to the amount of punitive damages awarded.
“(b) The appellate court shall independently reassess the nature, extent and economic impact of such an award and reduce or increase the award if appropriate in light of all the evidence.”
Abeta argues that OCL is precluded from raising this statute for the first time on appeal. Although we agree, we note that even if its provisions are applied to this case, the award of punitive damages is due to be affirmed. This Court has examined the record and has determined that the award of approximately $150,000 in punitive damages is amply supported by the evidence and is not the result of passion, bias, or any other improper motive. Although a full factual hearing to apply the factors discussed in Green Oil Co. v. Hornsby, 539 So.2d 218, 223-224 (Ala.1989), was not conducted, all pertinent factors except perhaps economic impact are reflected in the record. OCL makes no argument that the economic impact of the verdict is unjustifiably severe and this Court sees no indication that it is. There is therefore no reason to reduce the amount of punitive damages awarded.
OCL filed a motion for remittitur with its motion for new trial. That motion was denied by the trial court. This Court has required that trial courts set out in the record their reasons for interfering with a jury verdict, or refusing to do so, on grounds of excessiveness of damages. Green Oil Co. v. Hornsby, supra; Hammond v. City of Gadsden, 493 So.2d 1374, 1379 (Ala.1986). Failure on the part of the trial judge to set out those reasons has often resulted in a remand pursuant to Hammond. The record before this Court does not contain an explanation by the trial judge of his reasons for denying OCL’s motion for remittitur. However, OCL does not request a Hammond remand, and this Court is satisfied that the judgment is supported by the evidence and is not excessive. Therefore, a Hammond remand is not warranted.

Cross-Appeal

Abeta filed a cross-appeal in this action, seeking to have the default judgment against OCL for $200,000 reinstated. The review of an order setting aside, or refusing to set aside, a default judgment proceeds on the basis that the trial judge has great discretion and that his judgment will not be disturbed unless he has clearly abused that discretion. Roberts v. Wettlin, 431 So.2d 524, 526 (Ala.1983). This is especially true in light of the principle that the trial judge’s discretion should be exercised in favor of the defaulting party when there is some doubt as to the propriety of the default judgment. Oliver v. Sawyer, 359 So.2d 368, 369 (Ala.1978). It does not appear that the trial court abused its discretion by setting aside the default judgment against OCL, or erred in any other regard. The judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.

. Abeta’s allegation of negligence was later withdrawn, as were allegations of willful misconduct and violation of the Alabama Deceptive Trade Practices Act.