KENNEDY, Justice
(dissenting).
I must respectfully dissent from the order quashing the writ.
The plaintiff, Mayolia B. Hampton, appealed from a summary judgment in favor of the defendant, Liberty National Life Insurance Company, in this action seeking damages for fraud, fraudulent concealment, conversion, breach of contract, and what she called “the tort of felonious injury arising out of a life insurance policy.” The Court of Civil Appeals affirmed. Hampton v. Liberty National Life Ins. Co., 706 So.2d 1196 (Ala.Civ.App.1996).
In order to enter a summary judgment, the trial court must determine: (1) that there is no genuine issue of material fact, and (2) that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Newburn v. Dobbs Mobile Bay, Inc., 657 So.2d 849 (Ala.1995). In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. West v. Founders Life Assurance Co. of Florida, 547 So.2d 870 (Ala.1989).
The parties stipulated to the following facts before the trial court entered the summary judgment: In 1990, Mrs. Hampton sued Liberty National, on behalf of her deceased husband’s estate, in the Baldwin County Circuit Court. That lawsuit involved a life insurance policy Liberty National had issued to Mrs. Hampton’s husband. Mrs. Hampton and Liberty National entered into a settlement agreement and Mrs. Hampton signed a release. Mrs. Hampton again sued Liberty National in 1994 in the Baldwin County Circuit Court. This second lawsuit involved a different life insurance policy; that policy, also on the life of Mrs. Hampton’s husband, had been issued to Mrs. Hampton, not to her husband. Neither Mrs. Hampton nor Liberty National was aware of the claims set out in the 1994 lawsuit at the time the release was executed in the settlement of the 1990 lawsuit.
The release stated, in pertinent part:
“I, MAYOLIA B. HAMPTON, ... do hereby release and forever discharge LIBERTY NATIONAL LIFE INSURANCE COMPANY, ... from any and all claims, damages, demands, punitive damages, obligations, liabilities, actions, rights of action, causes of action, suits and disputes of any and every kind or nature whatsoever, which I now or may hereafter have, arising from any act, omission, incident or occurrence happening at any time prior to the date of this release and particularly those arising out of, in connection with, or in any way based upon any of the matters made the basis of that certain lawsuit styled Mayolia B. Hampton, Plaintiff vs. Liberty National Life Insurance Company, et of Defendant, in the Circuit Court of. Baldwin County, Case No. CV-90-796 and those arising out of any accident which may have occurred or damages which may ultimately be alleged or expenses pr damages which may have been incurred as a result of any act, omission, incident, occurrence, or damage occurring prior to the date of this Release.
“In executing this agreement, MAYO-LIA B. HAMPTOÑ, agrees that she has read this Release consisting of this and two (2) other pages, that she fully understands the terms and voluntarily accepts them for the purpose of making a full and final compromise settlement of any and all claims, disputed or otherwise, on account of matters set out hereinabove; and in entering into this settlement and in executing this Release, she. has taken into consideration all known injuries, disabilities, losses, damages and expenses resulting from the matters set out herein and all injuries, disabilities, losses, damages and expenses which may occur or become known in the *1201 future whether anticipated or not, as a result of the matters set out herein; that this Release shall apply to all such injuries, disabilities, losses, damages and expenses and consequences; that LIBERTY NATIONAL LIFE INSURANCE COMPANY admits no liability of any sort on account of or in connection with any of the matters set out herein and that this settlement is made and this Release is executed to terminate and forever foreclose further claims as a result of the matters set out herein.”
A release is a contract and, as such, it is subject to the rules governing the construction of contracts. See Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314 (Ala.1993) (citing contract law in construing a release).
“In the absence of fraud ..., a release supported by valuable consideration and unambiguous in meaning will be given effect according to the intent of the parties, that intent to be judged by the court from what appears within the four corners of the instrument itself.” Whitman v. Walker County Board of Education, 591 So.2d 481 (Ala.1991). “[Pjarol evidence is inadmissible to impeach [such a release].... However, a contract otherwise clear on its face may be ambiguous if collateral matters render its meaning uncertain.” Carnival Cruise Lines, Inc. v. Goodin, 535 So.2d 98, 101 (Ala.1988) (release did not bar fraud claim by handicapped person where defendant had represented to him that some bathrooms on its cruise ship were wheelchair-accessible when in fact no bathrooms were accessible by wheelchair).
“ ‘ “[A] latent ambiguity arises when the writing on its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain.” ’ ” Carnival Cruise Lines, 535 So.2d at 101, quoting Mass Appraisal Services, Inc. v. Carmichael, 404 So.2d 666, 672 (Ala.1981).
The 1990 lawsuit that led to the release arose out of a fact situation wholly unrelated to the facts on which the present lawsuit is based. The 1990 lawsuit involved a completely separate and distinct insurance policy, which was issued to Mrs. Hampton’s husband. In 1990, Mrs. Hampton sued on behalf of her deceased husband’s estate to collect the proceeds of his life insurance policy. The 1994 lawsuit involves an insurance policy issued to Mrs. Hampton personally. The facts underlying the 1994 lawsuit concern allegations of improper charges for premiums.
I disagree with the Court of Civil Appeals’ statement that it is irrelevant that when they executed the release to settle the 1990 lawsuit neither Mrs. Hampton nor Liberty National knew of the claims Mrs. Hampton set out in the 1994 lawsuit. When there is a latent ambiguity in a release, the scope and effect of the release is determined from the language in the release and the circumstances surrounding the making of the release. Clearly, neither party intended for the release to cover the claims raised in the 1994 lawsuit, because when they signed the release neither party knew of the existence of those claims. Because a release cannot be construed to include claims that were not within the contemplation of the parties, I must dissent.