# Foster v. Bush & Co.

*Action on a Promissory Note.*

1. *Filing additional pleas; within discretion of trial court.*—The al-

[Foster v. Bush & Co.]

lowance or rejection of additional pleas, proposed to be filed after the time for pleading has passed, is within the discretion of the trial court, and the exercise of this discretion is not revisable on appeal.

2. *Action by cotton factor on promissory note; admissibility of evidence offered.*—Where in an action by a cotton factor on a promissory note, given by defendant for a balance claimed by the factor to be due him, the defense is want and failure of consideration and set-off, and the issue formed is whether or not the plaintiff was negligent in handling the cotton shipped him by defendant before the execution of the note, and whether the plaintiff had correctly returned to defendant the weights of the cotton so shipped, evidence as to how plaintiff weighed cotton sent to him by defendant, whether it is usual for cotton shipped from defendant's section of the country to lose in weight, what is an unusual loss in weight per bale and that defendant's cotton shipped to plaintiff was cared for as well as possible, is admissible.

3. *Same; failure of consideration and set-off.*—In an action by a factor against his principal on a promissory note given by the defendant for a balance which was claimed by the factor to be due him for advances.made, the defendant may show by parol evidence a want of consideration for the note sued on, or may set off against a recovery on said note the damages sustained by him by reason of the negligent manner in which the property of defendant was handled and cared for by plaintiff, although the defendant was aware of the facts constituting the want of consideration and establishing the set-off at the time he executed the note.

4. *Liability of factor; degree of care imposed.*—Factors are liable only for a reasonable exercise of skill, and for ordinary care and diligence in the handling and protection of property consigned to them; and when cotton consigned to a factor is put on a wharf, because, owing to the destruction by fire of several warehouses in his city, it was impossible to get immediate warehouse room, and remains on the wharf only until storage in a warehouse could be secured, the factor is not liable to his principal for damages to said cotton resulting from exposure to the weather during the time it was on the wharf.

APPEAL from the Circuit Court of Tuscaloosa.

Tried before the Hon. S. H. SPROTT.

This action was brought on April 9, 1892, by the appellees, J. C. Bush & Co., against the appellant, Guy Foster, and counted on a promissory note from the defendant to the plaintiffs, executed on June 27, 1891, and payable December 1, 1891. The defendants pleaded the general issue, want of consideration, failure of consideration, payment, usury and set-off.

Upon the trial of the case, as is shown by the bill of exceptions, the plaintiffs introduced in evidence the note which is the basis of the suit. This note was "negotia-

[Foster v. Bush & Co.]

ble and payable at the First National Bank of Mobile, Alabama," and contained a waiver of exemption and a stipulation for the payment of attorney's fees, and was signed by the defendant, Guy Foster, and his wife, Annie E. Foster. The defendant, Guy Foster, testified in his own behalf, that in December, 1890, and in January and February, 1891, he shipped to plaintiffs, as commission merchants and cotton factors, 325 bales of cotton; that prior to this time, and up to June, 1891, plaintiffs had advanced him money in a large sum, and at the end of the season, after disposing of the cotton so shipped, and giving the defendant credit for the same, the plaintiffs claimed a balance of $834.71, and demanded of the defendant his note for such amount, and that in compliance with the demand, the defendant executed to plaintiffs the note sued on, and after its execution he shipped to plaintiffs two bales of cotton which were sold for $62, for which amount the said note is entitled to be credited. The defendant further testified that after this he learned that a large portion of the 325 bales of cotton, which he had shipped to the plaintiffs had been badly damaged after coming into the possession of Bush & Company by their negligence, and had been improperly and badly handled by them, and that by reason of such negligence he had sustained loss in the weights of the cotton, and in the price—the cotton having been damaged by mud and water, and having been exposed to the weather. The defendant further testified that the weights of the cotton as given by him were correct, and that said cotton lost greatly by Bush & Company's reported weights, a number of bales having lost over 100 pounds to a bale, and one as much as 190 pounds; that estimating the loss in each bale between the defendant's and plaintiffs' weights, and valuing the loss at the same rate per pound as the bale in which said loss occurred was reported to have been sold for by plaintiffs, the sum lost to him would amount to about $300; that he suffered loss of about $200 by reason of the failure of plaintiffs to sell 81 bales of cotton he ordered them to sell about the latter part of February, 1891, it being admitted that some of these 81 bales were not sold until June following, and that the price of cotton gradually declined from the last of February until June; and that he sustained loss by being charged with pickery bills, when it was not neces-

sary to send any of the cotton to the pickery. On cross-examination the defendant testified that he gave the note sued on with the full knowledge of the failure by the plaintiffs to sell the cotton according to instructions, and that he also knew of the difference between the weights of the cotton as weighed by himself and the weights of Bush & Company, and that he never made any complaint to Bush & Co. about these matters. The defendant introduced other evidence tending to show that none of the cotton was water-packed, but that some of the cotton shipped to Bush & Co., while in their possession, was permitted to lie from one to six weeks on the wharf at Mobile, in the mud and water, unprotected from the rain or weather, and that during that time storage and progressive storage was being charged by the plaintiffs on the cotton. The defendant then asked leave to file the following additional plea: "Comes the defendant, and for further answer to said complaint, says that the note upon which plaintiffs sued to recover is void because the same was obtained from defendants by false and fraudulent representations and statements of plaintiffs; that these statements and representations were material, and such that the defendant had a right to rely on, and did rely on, and without which these defendants would not have signed said note." The plaintiffs objected to the filing of this plea at this stage of the case. The court sustained the objection, and the defendant duly excepted.

During the cross-examination of the defendant, he was asked by plaintiffs' counsel: "Was not the cotton crop of 1890 a very poor grade of cotton?" To this question the defendant objected, because the same was immaterial and irrelevant, and duly excepted to the court's overruling such objection. The witness answered, that he "did not recollect whether it was a poor grade or not, but that it was very poor." The defendant then moved the court to exclude this answer from the evidence, for the reason that it was immaterial and irrelevant, to the issue involved. But the court overruled the motion, and the defendant duly excepted.

J. C. Bush, one of the plaintiffs, upon his examination as a witness, was asked: "How do you weigh cotton when you go to sell?" The defendant objected to this question, because the same was immaterial and irrelevant. The court overruled the objection, and the defend-

ant duly excepted. The witness answered : "The cotton is arranged in rows under the shed ; the sampler goes along and samples it ; the weighmasters come along right after him ; there are two weighmasters, the buyer's and mine ; each one takes down the weights in their books, and then verifies them." The defendant moved to exclude this evidence on the same grounds, and duly excepted to the court's overruling his motion. Said Bush was then asked : "Was there more bad cotton that season than usual?" The defendant raised the same objection to this question, and duly excepted to the court's overruling his objection, and upon the witness answering that there was more bad cotton that season than usual, "more than the season before or the season after," the defendant moved to exclude the answer on the ground of its immateriality and irrelevancy, and duly excepted to the court's overruling his motion. Said Bush was then asked : "Is it usual for cotton to lose weight when shipped from up the country?" The defendant interposed a like objection to this question, and duly excepted to the court's overruling it. The witness answered : "That it was usual for cotton shipped from up the country to lose in weight when it had been picked and ginned early in the season." The defendant moved to exclude this answer on the same grounds, and duly excepted to the court's overruling his motion. The witness Bush was then asked : "If a loss of 27 pounds per bale was unusual?" Against the objection and exception of the defendant the witness was permitted to answer : "Such a loss is unusual."

The plaintiff then introduced evidence tending to show that part of the cotton shipped by the defendant was stored for awhile under a shed near the wharf at Mobile, and that it was better cared for there than if it had been stored in a warehouse ; that some of the cotton was wet when it was received by Bush & Co., and had better chance of drying on said wharf than if it had been placed in the warehouse. That three of the eight bales of cotton that were sent to the pickery were reported as water-packed; that all of defendant's cotton received by plaintiffs was honestly and correctly weighed by plaintiffs, and that they took the best care they could of said cotton while in their possession; that the cotton was not damaged after coming into the possession of the plaintiffs,

[Foster v. Bush & Co.]

and that at the time of the execution of the note sued on,
the defendant raised no objection to the amount claimed
by the plaintiffs to be due them from him. The testi-
mony of the plaintiffs also tended to show that during the
season of 1890-91,.there was a scarcity of warehouses in
Mobile, and that, therefore, it was necessary that cotton
should remain on the wharf until storage could be secured
for it.

The court, at the request of the plaintiffs, gave the
following written charges to the jury, to the giving of each
of which the defendants separately excepted : (1.) "If the
jury believe from the evidence that the defendant, Guy Fos-
ter, willingly signed and delivered to the plaintiffs the note
sued on, on June 27th, 1891, or after that time, as his
promissory note, and after he was furnished by the plain-
tiffs with account sales of his cotton showing fully the
number and weights of the respective bales, and the price
at which the respective bales were sold, and that the de-
fendant knew the weights of the said bales and the prices
at which the cotton was sold when he made said note,
and that there was no fraud or deception practiced on
him by the plaintiffs, then he can not defeat a recovery
on said note, or establish an off-set thereto, by verbal
proof made at the trial, that there was a falling off in
weights, or that sales were made at less price than the
cotton should have brought in the Mobile market if care-
fully and prudently sold." (2.) "If the jury believe
from the evidence that the defendant, Guy Foster, exe-
cuted the note sued on, without fraud or deception from
plaintiffs, and after his cotton was sold, and account sales
rendered, and without objection or complaint, he can
not now be heard to complain that the plaintiff did not
carry out his orders in making immediate sales of the 81
bales which was on hand at the time of his visit to Mo-
bile." (3.) "If the jury believe from the evidence that
on account of the burning of the warehouses in Mobile
in October, 1890, it was impossible to secure immediate
warehouse room for defendant's cotton, and the same
was put on the wharf, but remained there only until
storage could be secured for it in warehouses, and that
the plaintiffs did all that reasonable factors could do un-
der the circumstances for the care and protection of the
said cotton, then they would not be liable to the defend-
ant for damages resulting from exposure to weather
during such time."

There were verdict and judgment for the plaintiffs for $740.36. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

H. B. FOSTER, for appellant.

HARGROVE & VANDEGRAAFF, contra.

BRICKELL, C. J.—1. The allowance or rejection of additional pleas, proposed to be filed after the time of pleading has passed, is matter of discretion in the primary court; and the exercise of the discretion is not revisable on error.—Jones v. Ritter, 56 Ala. 270; Steele v. Tutwiler, 57 Ala. 113.

2. The objections to the admissibility of the evidence offered by the appellees were properly overruled. Each part of it was pertinent to the case, having a tendency to prove or disprove the matters in issue.

3. As between the original parties to a negotiable promissory note, and of paper not negotiable as between those standing in privity, the consideration is always open to inquiry. The making of the paper with full knowledge of all the facts relied on as showing a want, or illegality, or failure of consideration, total or partial, or any valid defense, though it may be a set-off, or in the nature of a set-off, will not preclude the defense.— Ware v. Morgan, 67 Ala. 463 ; Stark v. Henderson, 30 Ala. 438; Holt v. Robinson, 21 Ala. 106; Finn v. Barclay, 15 Ala. 626 ; Clemens v. Loggins, 1 Ala. 622. As between the parties to a contract in writing, the consideration may be proved or disproved by parol, or verbal evidence. Litchfield v. Falconer, 3 Ala. 280 ; Nicholas v. Krebs, 11 Ala. 230 ; 2 Whart. Ev., § 1044. The first and second instructions given the jury on the request of the appellee, are in conflict with these well settled principles.

4. Factors are liable only for a reasonable exercise of skill, and for ordinary care and diligence in the exercise of their vocation. They are of consequence not liable for losses or injuries proceeding from causes, not attributable to their want of skill, or not connected with their negligence.— Story on Bailments, § 455. Whether reasonable skill, ordinary care and diligence has been exercised, is of necessity dependent upon the circum-

[Strauss & Sons v. Schwab *et al.*]

stances of the particular situation in which the factor may be placed. If the facts exist which are hypothesized in the third instruction given the jury, and there was evidence having a tendency to prove their existence, there is no room for the imputation of a want of care and diligence, or any dereliction of duty, in the safe keeping and protection of the cotton, and no liability for losses or injuries the cotton may have suffered because of its exposure to the weather.

For the errors we have pointed out, the judgment must be reversed and the cause remanded.