On Application for Rehearing.
 

 THOMAS, Judge.
 

 This court’s opinion of April 25, 2008, is withdrawn, and the following is substituted therefor.
 

 In 2002, Denice S. Walton was employed by Beverly Enterprises-Alabama, Inc., d/b/a Beverly Meadowood Health & Rehabilitation (“BE-A”), as the director of housekeeping. Walton was injured in an automobile collision in the line and scope of her employment. Walton sued BE-A and its third-party workers’ compensation administrator, Constitution State Services, LLC (“Constitution”), seeking workers’ compensation benefits and damages for the tort of outrage based on the failure to pay benefits (“the workers’ compensation action”).
 

 While the workers’ compensation action was pending, BE-A decided to subcontract its housekeeping services to Healthcare Services Group, Inc. (“HSG”). Walton left the employ of BE-A and became an employee of HSG on February 4, 2003. She continued to work for HSG at BE-A’s Meadowood facility until she was dismissed from her employment on February 6, 2004.
 

 Meanwhile, BE-A, Constitution, and Walton mediated the workers’ compensation action. On December 19, 2008, Walton executed a “release and receipt in full,” which read, in pertinent part:
 

 “In consideration of the sum of Sixty Five Thousand and no/100 Dollars ($65,-000.00) paid by or on behalf of Beverly Enterprises-Alabama, Inc. d/b/a Beverly Meadowood Health
 
 &
 
 Rehabilitation (incorrectly named in plaintiffs complaint as ‘Beverly Healthcare’) and Constitution State Services LLC, the receipt of which is hereby acknowledged, Denice S. Walton does hereby fully release and forever discharge Beverly Enterprises-Alabama, Inc. d/b/a Beverly Meadowood Health & Rehabilitation and Constitution State Services LLC and their officers, agents, attorneys, representatives, successors, assigns, affiliates, subsidiaries, parents, insurers, and related corporations and entities (hereinafter referred to as ‘the Released Parties’) of and from any and all claims, demands, causes of action, suits, and losses of every kind or nature, whether liquidated or contingent, which the undersigned may have or may have had at any time heretofore or may have at any time hereafter pertaining or relating to any matters or things occurring or failing to occur or in any manner connected with or growing out of the incident described in that
 
 *539
 
 certain civil action styled
 
 Denice S. Walton v. Beverly Healthcare, et al.,
 
 Civil Action No. CV-02-1690, currently pending in the Circuit Court of Jefferson County, Alabama, Bessemer Division (‘the Lawsuit’), and including, without limitation, all claims resulting from or arising out of the alleged incidents forming the basis of the Lawsuit that the undersigned has alleged against the Released Parties.”
 

 Walton desired to pursue a third-party action against the driver of the automobile that had collided with the vehicle she was driving when she was injured. Because the December 2003 release did not contain language waiving BE-A’s and Constitution’s rights under Ala.Code 1975, § 25-5-11(a), to a portion of any recovery Walton might receive as a result of that third-party action, BE-A and Walton executed another release on March 5, 2004, containing such language. The March 2004 release contained the same basic provisions as the December 2003 release, but it also contained the additional language emphasized below:
 

 “In consideration of the sum of Sixty-Five Thousand and no/100 Dollars ($65,-000.00) paid by or on behalf of Beverly Enterprises-Alabama, Inc. d/b/a Beverly Meadowood Health & Rehabilitation (incorrectly named in plaintiffs complaint as ‘Beverly Healthcare’) and Constitution State Services LLC, the receipt of which is hereby acknowledged,
 
 and in further consideration of Beverly Enterprises-Alabama, Inc. d/b/a Beverly Meadowood Health & Rehabilitation’s and Constitution State Services LLC’s waiver of any subrogation interest that Denice S. Walton has against third parties,
 
 Denice S. Walton does hereby fully release and forever discharge Beverly Enterprises-Alabama, Inc. d/b/a Beverly Meadowood Health & Rehabilitation and Constitution State Services LLC and their officers, agents, attorneys, representatives, successors, assigns, affiliates, subsidiaries, parents, insurers, and related corporations and entities (hereinafter referred to as ‘the Released Parties’) of and from any and all claims, demands, causes of action, suits, and losses of every kind or nature, whether liquidated or contingent, which the undersigned may have or may have had at any time heretofore or may have at any time hereafter pertaining or relating to any matters or things occurring or failing to occur or in any manner connected with or growing out of the incident described in that certain civil action styled
 
 Denice S. Walton v. Beverly Healthcare, et al.,
 
 Civil Action No. CV-02-1690, currently pending in the Circuit Court of Jefferson County, Alabama, Bessemer Division (‘the Lawsuit’), and including, without limitation, all claims resulting from or arising out of the alleged incidents forming the basis of the Lawsuit that the undersigned has alleged against the Released Parties.
 
 It is expressly understood and agreed that this release has no effect on any third party action allowed under the Workmen’s Compensation Act, specifically that cause now pending against Amanda Bales and Nationwide Insurance Company, Ms. Walton’s automobile insurer.
 

 [[Image here]]
 

 “...
 
 Nothing herein is intended to benefit any entity not a party to the lawsuit, nor expand or extend any entity’s right of subrogation beyond that recognized pursuant to Alabama
 
 law.”
 
 [1]
 

 
 *540
 
 In addition, both the December 2003 release and the March 2004 release contain the following integration or merger clause:
 

 “It is agreed and understood that this Release contains the entire agreement between the parties and is executed solely for the consideration expressed herein without any other representation, promise, or agreement of any kind whatsoever. It is further agreed that this Release supersedes any and all prior agreements or understandings between the parties hereto, whether oral or written, pertaining to the subject matter hereof, and that the terms hereof are contractual and not mere recitals.”
 

 In October 2004, Walton sued BE-A and Carolyn Disher, the administrator of the Meadowood facility, seeking to extend Ala.Code 1975, § 25-5-11.1, which prohibits the dismissal of an employee from his or her employment on the sole basis that the employee has filed a workers’ compensation claim, to prevent a previous employer’s interference with an employee’s employment with a subsequent employer in retaliation for maintaining a workers’ compensation action against that previous employer (for simplicity, we will refer to this claim as “the retaliatory-discharge claim”). Walton also sought damages for intentional interference with a contractual or business relationship (“the intentional-interference claim”). After answering the complaint and asserting release as an affirmative defense, BE-A and Disher moved for a summary judgment on the basis that Walton had released any and all claims against BE-A and Disher, as a representative of BE-A, in the March 2004 release, which was executed
 
 after
 
 HSG had dismissed Walton from her employment. Walton argued that the March 2004 release was defective because it lacked consideration. She further argued that the existence of the December 2003 and March 2004 releases, combined with other documents relating to the December 2003 release, created a latent ambiguity that would permit the consideration of parol evidence to determine the true intent of the parties in executing the March 2004 release. The trial court entered a summary judgment in favor of BE-A and Disher. Walton appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to Ala.Code 1975, § 12-2-7(6).
 

 We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3);
 
 see Lee v. City of Gadsden,
 
 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ”
 
 Lee,
 
 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989);
 
 see
 
 Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw.
 
 See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C.,
 
 792 So.2d 369, 372 (Ala.
 
 *541
 
 2000); and
 
 Fuqua v. Ingersoll-Rand Co.,
 
 591 So.2d 486, 487 (Ala.1991).
 

 We first consider whether the March 2004 release is void for lack of consideration. Walton argues that the March 2004 release was “a mere recital of the terms of the settlement of the previous action” and that, because, based on parol evidence regarding the December 2003 release, the December 2003 release was intended to include the provisions regarding BE-A’s and Constitution’s waiver of their rights under § 25-5-11(a) as consideration for that release, no new consideration existed for the March 2004 release.
 
 See Gloor v. BancorpSouth Bank,
 
 925 So.2d 984, 992 (Ala.Civ.App.2005) (stating the well-established principle that a performance one is required by contract to perform is not consideration for a second contract). Specifically, Walton relies on a November 14, 2003, letter from the mediator, which states that “BE-A and Constitution are waiving any claims which they may have to a lien under the workers’ compensation act,” and the “Petition for Lump Sum Settlement and Proposed Settlement” submitted to the trial court in the workers’ compensation action on December 16, 2003, which states that BE-A and Constitution are “waiving the lien amount currently valued at $16,320.00 of the third-party case.” This parol evidence, Watson contends, proves that, although the December 2003 release did
 
 not
 
 contain the provisions regarding BE-A’s and Constitution’s waiver of their rights under § 25-5-ll(a) contained in the March 2004 release, the parties intended BE-A’s and Constitution’s waiver of their rights under § 25-5-11(a) be part of the consideration for the
 
 December 2003
 
 release. Because, under Walton’s reasoning, the recitation of the waiver of BE-A’s and Constitution’s rights under § 25-5-11(a) as consideration for the March 2004 release fails to provide
 
 new
 
 consideration for that release, Walton argues that the March 2004 release is void for lack of consideration.
 

 Walton bases her argument that the March 2004 release lacks consideration on parol evidence regarding the intended consideration of the December 2003 release.
 
 [2]
 
 According to Walton, parol evidence is admissible to demonstrate a failure of consideration; indeed, one exception to the par-ol-evidence rule permits parol evidence to show a lack or failure of consideration.
 
 See Parker v. McGaha,
 
 294 Ala. 702, 707, 321 So.2d 182, 185 (1975) (collecting exceptions to the parol-evidence rule). However, that principle alone does not end the inquiry. In fact, our supreme court has explained that one must consider all the various exceptions to and applications of the parol-evidence rule to determine its appropriateness in a given situation.
 
 Joseph v. Hopkins,
 
 276 Aa. 18, 22-23, 158 So.2d 660, 664 (1963).
 

 “While general statements may be found in our decisions to the effect that
 
 *542
 
 the consideration for a written instrument is open to inquiry, and the true consideration shown by parol [evidence] for the purpose of showing its validity or its failure,
 
 (Hamaker v. Coons,
 
 117 Ala. 603, 23 So. 655 [(1898)];
 
 Ramsey v. Young,
 
 69 Ala. 157 [ (1881) ];
 
 State Savings & Loan Co. v. Strong,
 
 226 Ala. 453, 147 So. 436 [ (1933) ];
 
 Jackson v. Sample,
 
 234 Ala. 75, 173 So. 510 [ (1937) ]), such broad enunciations are limited by other statements that parol evidence may not be admitted to alter the character of the consideration.
 
 Moore v. Williamson,
 
 213 Ala. 274, 104 So. 645, 42 A.L.R. 981 [ (1925) ], nor is parol evidence admissible where its effect is to change, or defeat, the legal operation of a written instrument which is clear on its face.
 
 Smith v. Wilder,
 
 270 Ala. 637, 120 So.2d 871 [ (1960) ].”
 

 Joseph,
 
 276 Ala. at 22-23,158 So.2d at 664.
 

 Our supreme court has further stated that
 

 “[p]arol evidence of prior or contemporaneous verbal agreements varying or adding to the written contract is not
 
 admissible.
 
 — Thompson
 
 F. & M. Co. v. Glass,
 
 136 Ala. 648, 33 South. 811 [ (1903) ]; 9 Ency. Ev. pp. 331-334.
 
 It is true that, between the parties thereto, the consideration of contracts is open to inquiry by parol [evidence],
 
 — Foster
 
 v. Bush,
 
 104 Ala. 662, 16 South. 625 [(1894)], among others.
 
 But that is manifestly a different matter from allowing parol evidence of a contemporaneous agreement, the immediate effect of which would be to impose conditions wholly omitted from the written contract.
 
 The rule against the reception of parol evidence of prior or contemporaneous verbal agreements to add to or vary written contracts comprehends verbal agreements, whereby the
 
 legal effect
 
 of the instrument would be
 
 changed.
 
 — Mo-
 
 ragne v. Richmond L. & M. Co.,
 
 124 Ala. 537, 27 South. 240 [ (1900) ];
 
 Ala. Nat. Bank v. Rivers,
 
 116 Ala. 1, 11, 22 South. 580, 67 Am. St. Rep. 95 [ (1897) ]; 9 Ency. Ev. pp. 333, 334.”
 

 Able v. Gunter,
 
 174 Ala. 389, 393, 57 So. 464, 465 (1912) (emphasis on “legal effect” in original; other emphasis added).
 

 As noted above, both the December 2003 release and the March 2004 release contain merger or integration clauses. In
 
 Harbor Village Home Center, Inc. v. Thomas,
 
 882 So.2d 811, 816 (Ala.2003), our supreme court explained merger clauses:
 

 “A merger clause, also known as an integration clause, ‘is a portion of a particular contract that restates the rationale of the parol evidence rule within the terms of the contract.’
 
 Environmental Sys., Inc. v. Rexham Corp.,
 
 624 So.2d 1379, 1383 (Ala.1993). These clauses ‘are properly used to ensure that preliminary negotiations, whether oral or written[,] are either memorialized in the final contract or are not considered part of it.’
 
 Crown Pontiac, Inc. v. McCarrell,
 
 695 So.2d 615, 618 (Ala.1997). Moreover, a merger clause ‘establish[es] that a written agreement is a completely integrated document, into which all
 
 pri- or and contemporaneous negotiations
 
 are merged.’
 
 Crimson Indus., Inc. v. Kirkland,
 
 736 So.2d 597, 601 (Ala.1999).”
 

 Thus, the merger clause in the December 2003 release establishes that the release was an integrated agreement and that the negotiations leading up to the execution of that release were “either memorialized in the final contract or are not considered part of it.”
 
 Crown Pontiac, Inc. v. McCarrell,
 
 695 So.2d 615, 618 (Ala. 1997). In addition, the merger clause in the March 2004 release bars consideration of the December 2003 release, because the December 2003 is a preliminary agreement that was superseded by the March 2004
 
 *543
 
 release.
 
 See Infiniti of Mobile, Inc. v. Office,
 
 727 So.2d 42, 47 (Ala.1999);
 
 Ex parte Conference America, Inc.,
 
 713 So.2d 953, 956 (Ala.1998); and
 
 Crown Pontiac,
 
 695 So.2d at 618.
 

 To allow Walton to prove that the parties intended the consideration for the December 2003 release to include BE-A’s and Constitution’s waiver of their rights under § 25-5-ll(a) would require this court to ignore the merger clause contained in that release as well as the merger clause contained in the March 2004 release. In addition, although parol evidence is admissible to prove a lack of or failure of consideration,
 
 Parker,
 
 294 Ala. at 707, 321 So.2d at 185, to add BE-A’s and Constitution’s waiver of their rights under § 25-5-ll(a) as consideration for the December 2003 release would “impose conditions wholly omitted from the written contract.”
 
 Able,
 
 174 Ala. at 393, 57 So. at 465. We cannot agree that the March 2004 release is void for lack of consideration.
 

 Walton’s second argument is more difficult to resolve. She argues that the two releases, considered together and with other documents concerning the mediation of the workers’ compensation action, create a latent ambiguity that requires the consideration of parol evidence to determine the true intent of the parties in executing the March 2004 release. Again, Walton relies on the November 14, 2003, letter from the mediator, which states that “BE-A and Constitution are waiving any claims which they may have to a lien under the workers’ compensation act,” and the “Petition for Lump Sum Settlement and Proposed Settlement” submitted to the trial court in the workers’ compensation action on December 16, 2003, which states that BE-A and Constitution are “waiving the lien amount currently valued at $16,320.00 of the third-party case.”
 

 Typically, parol evidence concerning the negotiations leading to the execution of a release is not admissible to vary the terms of the release.
 
 Carnival Cruise Lines, Inc. v. Goodin,
 
 535 So.2d 98, 101 (Ala.1988);
 
 Hampton v. Liberty Nat’l Life Ins. Co.,
 
 706 So.2d 1196, 1198 (Ala. Civ.App.1996). If a trial court determines that a contract is ambiguous on its face, i.e., patently ambiguous, parol evidence may be admitted to resolve the ambiguity.
 
 J.I.T. Servs., Inc. v. Temic Telefunken-RF, Eng’g, L.L.C.,
 
 903 So.2d 852, 857 (Ala. Civ.App.2004). In addition, “ ‘parol or other extrinsic evidence is admissible to explain or clarify a latent ambiguity,’ ”
 
 Mass Appraisal Sews., Inc. v. Carmichael,
 
 404 So.2d 666, 672 (Ala.1981) (quoting
 
 Gibson v. Anderson,
 
 265 Ala. 553, 555, 92 So.2d 692, 694 (1956)), i.e., an ambiguity that arises not from the face of the document but instead from a “ ‘ “collateral matter that makes its meaning uncertain.” ’ ”
 
 Id.
 
 More specifically, “[a]n ambiguity is latent when the language employed is clear and intelligible and suggests but a single meaning but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.”
 
 Thomas v. Principal Fin. Group,
 
 566 So.2d 735, 739 (Ala.1990).
 

 Our supreme court addressed whether a latent ambiguity existed regarding the release at issue in
 
 Carnival Cruise Lines.
 
 Goodin, a physically handicapped passenger requiring the use of a wheelchair, had executed a release, releasing Carnival Cruise Lines, Inc., from “all responsibility associated with Goodin’s physical condition as it affected use of any facilities aboard ship,” before embarking on a cruise aboard a Carnival ship.
 
 Carnival Cruise Lines,
 
 535 So.2d at 100. The language of the release indicated that “
 
 ‘certain
 
 bathrooms [aboard the ship] do not accommodate a wheelchair.’ ”
 
 Id.
 
 at 101. However, none of the bathrooms aboard the Carnival ship
 
 *544
 
 accommodated a wheelchair.
 
 Id.
 
 at 100 & 101. Our supreme court affirmed the trial court’s submission of the issue of the true intent of the parties regarding the release to the jury because the extraneous fact that all the bathrooms aboard the ship, not just certain bathrooms, were not wheelchair-accessible created a latent ambiguity.
 
 Id.
 
 at 101. The holding that a latent ambiguity existed in
 
 Carnival Cruise Lines
 
 was based on the determination that, although, on its face, the release indicated that
 
 certain
 
 bathrooms would be inaccessible to Goodin, the fact that
 
 all
 
 the bathrooms on the Carnival ship were inaccessible made the meaning of the term “certain” quite uncertain.
 

 Based upon an alleged latent ambiguity, Walton asserts that parol evidence is admissible in this case to clarify the intent of the parties; that latent ambiguity, she asserts, creates a jury question regarding whether the March 2004 release was intended to release BE-A and Disher from liability for the retaliatory-discharge and intentional-interference claims that arose after the execution of the December 2003 release but before the execution of the March 2004 release. The latent ambiguity, Walton asserts, is that the documents regarding the December 2003 release indicate that the parties had, in fact, agreed that BE-A and Constitution would relinquish their rights under § 25-5-ll(a). To the extent that Walton is arguing that such evidence makes the December 2003 release ambiguous, it is clear that the December 2003 release did not contain any language remotely capable of evidencing such an agreement regarding the rights of BE-A and Constitution under § 25-5-11(a). None of the terms of the December 2003 release are capable of being interpreted to include the term that Walton argues was intended to be a part of that release. Although extrinsic evidence — the mediator’s report and the proposed settlement submitted to the trial court — indicates that, in fact, such an agreement was contemplated by the parties during the mediation of the workers’ compensation action and the preparation of the December 2003 release, permitting the documents created during negotiations pertaining to the release to supplant the language in the release would thoroughly eradicate the integration clause, and the latent ambiguity “exception” would swallow the general rule that the terms of an unambiguous contract may not be altered by parol evidence concerning its making. Thus, we cannot conclude that a latent ambiguity exists as to the December 2003 release.
 

 To the extent that Walton is arguing that a latent ambiguity exists as to the March 2004 release, we are likewise not convinced. The March 2004 release contains the term missing from the December 2003 release and has no terms that are susceptible to two or more different meanings, even in light of the extraneous evidence that Walton offered to show that the December 2003 release was intended to contain the provisions relating to BE-A’s and Constitution’s waiver of rights under § 25-5-ll(a).
 
 See Kimbrough v. Dickinson,
 
 247 Ala. 324, 327, 24 So.2d 424, 426 (1946) (stating in a discussion of latent ambiguity that “it cannot be said to be an ambiguity if its language is not susceptible of more than one construction”). Walton argues that the “timing of the signing of the [March 2004] release creates at least a latent ambiguity,” but she fails to explain how the timing of the signing of the March 2004 release creates any ambiguity.
 

 Walton argues that in signing the March 2004 release she did not intend to release the retaliatory-discharge and intentional-interference claims, which arose
 
 after
 
 the settlement of the workers’ compensation action. However, the March 2004 release contains typical release language and releases “any and all claims” related to the incident giving rise to the workers’ com
 
 *545
 
 pensation action. By now, it is without question that language like that quoted above in a release in a workers’ compensation action releases the employer from liability for a retaliatory-discharge claim arising from the workers’ compensation claim unless there is evidence of fraud.
 
 [3]
 

 See Gates Rubber Co. v. Cantrell,
 
 678 So.2d 754, 756 (Ala.1996);
 
 Ex parte Aratex Servs., Inc.,
 
 622 So.2d 367, 369 (Ala.1993);
 
 Sanders v. Southern Risk Servs.,
 
 603 So.2d 994, 995 (Ala.1992); and
 
 Dow-United Tech. Composite Prods., Inc. v. Webster,
 
 701 So.2d 22, 24 (Ala.Civ.App.1997). Naturally, an employee may reserve the right to pursue a retaliatory-discharge claim in a release.
 
 Ex parte Aratex Servs., Inc.,
 
 622 So.2d at 369 (citing
 
 Regional Health Servs., Inc. v. Hale County Hosp. Bd.,
 
 565 So.2d 109, 113 (Ala.1990)). Despite her knowledge when she signed the March 2004 release that she might have a retaliatory-discharge claim or an intentional-interference claim against BEA, Walton failed to reserve the right to pursue such claims in the release. Thus, by its terms, the March 2004 release bars Walton’s retaliatory-discharge and intentional-interference claims against BE-A and Disher. The summary judgment in their favor is therefore affirmed.
 

 APPLICATION OVERRULED; OPINION OF APRIL 25, 2008, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
 

 PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 THOMPSON, P.J., concurs in the result, without writing.
 

 [1]
 

 . As Walton points out, although the language of the release indicates that BE-A and Constitution have granted Walton permission to pursue the third-party action against the other driver, she already had that right. Ala.Code 1975, § 25-5-11(a).
 

 [2]
 

 . Walton argued on original submission that the March 2004 release was void because it lacked consideration; however, on rehearing she has supported what is in substance that same argument with new and different authority, focusing mainly on the admission of parol evidence to prove that the consideration recited in the March 2004 release was, in fact, intended to be consideration for the December 2003 release. See our discussion of this issue,
 
 infra.
 
 Walton presented no authority supporting the consideration of parol evidence to support her lack-of-consideration argument regarding the March 2004 release in her brief on original submission; thus, this argument could have been characterized as one presented for the first time on rehearing.
 
 See Water Works & Sewer Bd. of Selma v. Randolph,
 
 833 So.2d 604, 608-09 (Ala.2002) (on application for rehearing); and
 
 Stover v. Alabama Farm Bureau,
 
 467 So.2d 251, 253 (Ala. 1985). Because the argument is still essentially the same, we have chosen to address it on rehearing.
 

 [3]
 

 . Walton does not allege that the March 2004 release was tainted by fraud on the part of BE-A or Constitution.