[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14922
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cv-02544-IPJ

DAVID MAC SPARKS,

Plaintiff-Appellant,

versus

SUNSHINE MILLS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 12, 2014)

Before WILLIAM PRYOR, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

David Mac Sparks appeals summary judgment granted to Sunshine Mills,

Inc. ("Sunshine") on his retaliatory-discharge claim, brought under Alabama Code

§ 25-5-11.1, and his interference and retaliation claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2609-19.  We affirm.

## I. BACKGROUND

Sunshine, a pet-food manufacturing company, owns and operates a plant in Red Bay, Alabama.  Sparks began working at the Red Bay plant in June 2006.  He worked as an Expander Operator there until Sunshine terminated him on August 5, 2010.  As an Expander Operator, Sparks was responsible for operating a machine that made pet food.  His duties included adding ingredients to a mixer and sending the ingredients to the expander machine.  While operating the machine, Sparks monitored the feed continuously, adjusting moisture levels and other variables as necessary.  During Sparks's employment, Michael Myrick was his immediate supervisor, Charles "June" Holland was the Plant Superintendent, and Mark Suiter was the Plant Manager.

Sunshine does not have a written disciplinary policy.  Instead, it generally follows a "three write-up rule."  R. at 208.  Under that rule, an employee typically receives three critical write-ups before being terminated.  Holland and Suiter testified, however, that employees are not fired automatically after receiving three write-ups, nor are employees guaranteed future employment by virtue of not having violated the three write-up policy.  The Plant Manager, Suiter, had discretion to terminate employees based on the nature and severity of their

2

infractions.  During depositions, Sparks testified he understood that any actions jeopardizing product quality could lead to disciplinary action, including termination.

On September 17, 2009, Holland issued Sparks a write-up for running feed at the wrong density, a production error that could have resulted in termination had Sparks not improved his performance.  On April 19, 2010, Sparks allegedly received another write-up after he improperly ran feed and failed to make necessary adjustments, which caused the feed to blow apart.  Sparks contested the validity of the write-up, however, because it was unsigned by any supervisor.

While sweeping at work, on June 7, 2010, Sparks stepped backward into a hole and twisted his ankle.  He saw a doctor the same day, received an ankle brace and pain medication, and returned to work a few days later with no restrictions.  Sparks subsequently filed a claim for workers' compensation benefits.

On July 7, 2010, Sparks returned to the doctor, who directed him to continue using the ankle brace and taking medication.  The doctor also directed Sparks to attend physical therapy.  During his deposition, Sparks testified he did not discuss the possibility of ankle surgery with his doctor during the July 7 visit.  In a later declaration, however, Sparks changed his testimony and stated he had discussed the possibility of surgery with his doctor on July 7.

On July 27, 2010, Sparks received another write-up for failing to adjust the feed flow on the trolley, which caused the bed to run over onto a catwalk and locked up the trolley.  Sparks disputed in the district court that the July 27 incident constituted a production error on his part, because the trolley already had been locked up, when he started the machine.

On July 28, 2010, Sparks again saw his doctor, who ordered an MRI and a nerve conduction test to determine whether Sparks would need surgery.   Sparks testified that he told Myrick later that day that "it was looking like it was very possible [he was] going to have to have surgery."  R. at 253.  Sparks asserted he informed Holland of his possible need for surgery the next day, on July 29, 2010.  Sparks could not recall whether he informed Suiter of his ankle injury or his possible need for surgery.  Sparks testified he did not specifically request FMLA leave for possible surgery.

On August 3, 2010, Sparks was written up for another incident involving feed quality.  According to Sunshine, Sparks failed to make proper adjustments to the feed and failed to ensure the bad feed was sent to regrind, which resulted in 35,000 pounds of contaminated pet food.  Sparks did not dispute the August 3 incident occurred, but he argued the incident was not his fault.

On August 4, 2010, Sparks took the day off to receive an MRI on his ankle.  When he returned to work on August 5, 2010, Sunshine terminated his

4

employment.  Sunshine asserted it had terminated him for running bad feed and for failing to take steps he had taken as a matter of routine for years.

On April 27, 2011, Sparks executed a Petition to Approve Worker's Compensation Settlement Agreement with Sunshine, which stated the following:

> 6.  Plaintiff and defendant have agreed upon, subject to court approval, a lump sum settlement of $2,200.00.  This settlement is based upon the permanent partial disability rating to the leg.  This amount shall be accepted by the employee as a full and final settlement of all claims of the employee for compensation benefits, whether in the nature of temporary partial or total; permanent partial or total; and or past, present or future vocational rehabilitation benefits.
>
> . . . .
>
> 8.  Plaintiff understands that this settlement, if approved, is a compromise of all claims which Plaintiff may now have or may have in the future as a result of this injury, and that no further Worker's Compensation benefits, vocational rehabilitation or vocational rehabilitation expenses will be paid as a result of the aforesaid accident and injury.

R. at 556.  An Alabama circuit judge approved the settlement agreement and noted the agreement was a "settlement of all compensation and vocational and rehabilitation benefits due [Sparks] under the Alabama Worker's Compensation Act."  R. at 558.

On July 25, 2012, Sparks filed the instant federal complaint against Sunshine, alleging Sunshine had violated Alabama Code § 25-5-11.1, when it discharged him in retaliation for filing a workers' compensation claim with respect to his on-the-job ankle injury.  He further alleged Sunshine had violated the FMLA

5

by (1) interfering with his right to take FMLA leave to have reconstructive ankle surgery, and (2) retaliating against him after he had stated his potential need for FMLA leave.

Sunshine moved for summary judgment on all claims and argued Sparks had released his claims in the settlement of his workers' compensation claim. Alternatively, Sunshine argued Sparks's claims failed on the merits, because he had not established a prima facie case of retaliatory discharge under Alabama law or interference or retaliation under the FMLA.

The district judge found Sparks had released Sunshine of liability for his Alabama Code § 25-5-11.1 retaliatory-discharge claim, because the Alabama Supreme Court, in *Gates Rubber Co. v. Cantrell*, 678 So. 2d 754, 755-56 (Ala. 1996), and *Sanders v. Southern Risk Services*, 603 So. 2d 994, 995-96 (Ala. 1992), had held that a general release in a workers' compensation settlement agreement precluded the employee from subsequently asserting a retaliatory-discharge claim against his employer. The judge nevertheless addressed Sparks's retaliatory-discharge claim on the merits and concluded Sparks had failed to establish a prima facie case.

The judge determined Sparks had not released his FMLA claims in his workers' compensation settlement agreement. Relying on *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269 (11th Cir. 2012), the judge found

6

the FMLA entitled Sparks to protection from interference, even if his triggering event never occurred or would not eventually qualify for FMLA leave. Nevertheless, the judge determined the claim failed, because Sparks's statement that "it was very possible that [he] was going to have to have surgery" was insufficient to put Sunshine on notice of Sparks's intent to invoke his right to take FMLA leave. R. at 803. For the same reason, the judge found Sparks could not establish a prima facie case of FMLA retaliation, because he could not prove he had engaged in statutorily protected activity or his termination of employment was causally related to statutorily protected activity. Accordingly, the judge granted Sunshine's motion for summary judgment on all of Sparks's claims and dismissed the case with prejudice.

## II. DISCUSSION

A. Waiver of Alabama Code § 25-5-11.1 Retaliatory-Discharge Claim

On appeal, Sparks argues the district judge erred by finding that the release in his workers' compensation settlement agreement extended to his retaliatory-discharge claim. He asserts *Sanders* and *Cantrell* are distinguishable from his case, because the releases at issue in those cases contained "or otherwise" language and were therefore much broader than the release in his settlement agreement. He further contends the Alabama Supreme Court would not follow

*Sanders* and *Cantrell* today, based on its more recent decision in *Dudley v. Mesa Industries*, 770 So. 2d 1082, 1084 (Ala. 2000).

We review a district judge's granting summary judgment de novo and view all evidence and draw all reasonable inferences in favor of the nonmoving party. *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1254 (11th Cir. 2012). Summary judgment is proper only "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted). "A genuine [dispute] of material fact exists when a reasonable jury could return a verdict for the nonmoving party." *Id.*

In *Sanders*, the Supreme Court of Alabama examined whether an employee's Alabama Code § 25-5-11.1 retaliatory-discharge claim was precluded by a prior settlement agreement between the parties involving workers' compensation. *Sanders*, 603 So. 2d at 994-96. The settlement agreement included a provision for a "lump sum [payment] in full settlement of *any and all claims* for compensation benefits due and rehabilitation or retraining benefits due under the Workmen's Compensation Act of the State of Alabama." *Id.* at 995 (emphasis added). The agreement further provided that, upon payment of that sum, "the employer shall be, and hereby is released from *all claims* on account of said injury, under said Act *or otherwise.*" *Id.* (emphasis added). Regarding the § 25-5-11.1 retaliatory-discharge claim, the court stated: "Unless there is evidence of fraud, a

8

settlement of an employee's claims under the Workmen's Compensation Act is conclusive of any other claims the worker may have." *Id.*

Likewise, in *Aratex*, an employer moved for summary judgment on its former employee's claim for retaliatory discharge and argued the employee had released that claim in her settlement agreement for workers' compensation. *Ex parte Aratex Servs., Inc.*, 622 So. 2d 367, 368 (Ala. 1993). The Alabama Supreme Court noted the release language in that case was virtually identical to the language of the release at issue in *Sanders*. *Id.* It concluded that, because there was no allegation or evidence of fraud, the settlement of the employee's claim under the Alabama Workmen's Compensation Act "was conclusive of any other claims she might have had except those claims expressly reserved in the release." *Id.* at 369 (internal quotation marks omitted). Because the employee did not expressly reserve her claim for retaliatory discharge, the trial court properly found that claim was barred by the release agreement. *Id.*

In *Cantrell*, the Alabama Supreme Court summarized its holdings in *Sanders* and *Aratex* and held a "settlement of any and all claims for compensation benefits due and rehabilitation or retraining benefits due is conclusive of any other claims, unless there is evidence of fraud, or the claim in issue is expressly excepted from the settlement agreement." *Cantrell*, 678 So. 2d at 756 (citation and internal quotation marks omitted).

9

The Alabama Supreme Court implicitly declined, however, to extend its holding in *Cantrell* to claims brought under Alabama Code § 25-5-11.[1]  *Dudley*, 770 So. 2d at 1084-85.  In *Dudley*, the plaintiff filed a complaint against his employer, raising a claim for workers' compensation benefits and a claim for damages, pursuant to § 25-5-11, based on the employer's alleged failure to maintain a safety device.  *Id.* at 1083.  The parties eventually settled the workers' compensation claim, and the order approving the settlement released the employer from "any and all claims for compensation and vocational rehabilitation benefits due or which may become due to the employee under the Workmen's Compensation Act of Alabama."  *Id.*  The trial court simultaneously granted the employee leave to amend his complaint to add new claims and defendants.  *Id.* After the employee amended his complaint, the defendants moved to dismiss, arguing the settlement agreement had disposed of the employee's claims.[2]  *Id.*  The trial court granted the motion and found the settlement agreement had disposed of the entire original complaint and that it lacked jurisdiction to consider the amended claims.  *Id.*

---

[1] Alabama Code § 25-5-11 creates negligence causes of action against third parties who are liable for an employee's injury or death and against employers and co-employees for willful conduct that caused the injury or death.  Ala. Code. § 25-5-11.

[2] The employee in *Dudley* did not raise a retaliatory-discharge claim against his employer under Alabama Code § 25-5-11.1.  *See generally id.*

10

On appeal, the Alabama Supreme Court reversed and concluded the trial court had not disposed of the employee's § 25-5-11 claim. *Id.* at 1084.  The court held the settlement agreement applied only to the claim for workers' compensation and vocational benefits, not the § 25-5-11 claim, in part because § 25-5-11 claims were considered tort claims and not workers' compensation claims. *Id.* at 1084-85.  Notably, the dissent in *Dudley* mentioned briefly that retaliatory-discharge claims under § 25-5-11.1 are also tort claims. *Id.* at 1086 (Hooper, J., dissenting).  The Alabama Supreme Court, however, did not distinguish between the two types of claims when making its ruling in *Dudley*. *See id.* at 1084-85.  Moreover, the Alabama Supreme Court has declined to review more recent cases in which the lower court found a workers' compensation settlement agreement released a subsequent retaliatory-discharge claim. *See, e.g.*, *Walton v. Beverly Enterprises-Alabama, Inc.*, 4 So. 3d 537, 545 (Ala. Civ. App. 2008).

Based on our review of the Alabama precedent, the district judge did not err by finding Sparks had released his retaliatory-discharge claim against Sunshine. Sparks understood his settlement agreement to be "a compromise of all claims which [he] may now have or may have in the future as a result of [his] injury, and that no further Worker's Compensation benefits, vocational rehabilitation or vocational rehabilitation expenses will be paid as a result of the aforesaid accident and injury." R. at 556.  Although the release did not contain the "or otherwise"

11

language present in the releases in *Sanders* and *Cantrell*, the Alabama Supreme Court in those cases did not focus on the presence of that phrase when deciding the releases included retaliatory-discharge claims. Instead, the court emphasized language stating the settlement resolved "any and all claims for compensation benefits due and rehabilitation or retraining benefits due" and the defendant was "released from all claims." *See Cantrell*, 678 So. 2d at 754-55; *Sanders*, 603 So. 2d at 995-96. The order approving Sparks's settlement contains sufficiently similar language.

In addition, Sparks has not alleged fraud, and, as in *Aratex* and *Cantrell*, there was no express reservation of the retaliatory-discharge claim. *Cantrell*, 678 So. 2d at 756; *Aratex*, 622 So. 2d at 369. Although Sparks correctly asserts the Alabama Supreme Court did not follow *Cantrell* in *Dudley*, the court in *Dudley* was analyzing whether release language in a workers' compensation settlement agreement released a claim brought under § 25-5-11, not a retaliatory-discharge claim brought under § 25-5-11.1. *Dudley*, 770 So. 2d at 1083. Moreover, the court chose not to distinguish between the two types of claims, despite the dissent's mention that both claims are considered to be tort claims under Alabama law. *See generally id.* Thus, the Alabama Supreme Court arguably intended for *Sanders* and *Cantrell* to remain good law. Sparks has failed to distinguish the situation in his case from the situation dealt with in *Sanders* and *Cantrell*. Therefore, the

12

district judge did not err by finding Sparks had released his § 25-5-11.1 retaliatory-discharge claim.[3]

B. FMLA Interference and Retaliation Claims

Sparks also argues on appeal he gave Sunshine sufficient notice of his need for FMLA leave when he informed his supervisors that surgery seemed imminent. He contends Sunshine violated his rights under the FMLA, because Sunshine terminated him to avoid accommodating his need for FMLA leave and in retaliation for requesting such leave.

The FMLA grants an eligible employee the right to take up to 12 work weeks of unpaid leave for any 12-month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). To protect this right, the FMLA allows employees to bring a private cause of action for interference or retaliation. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). To assert a claim for interference under the FMLA, an employee must be

---

[3] Sparks has failed to establish a prima facie case of retaliatory discharge. *See Ala. Power Co. v. Aldridge*, 854 So. 2d 554, 563 (Ala. 2002) (holding a plaintiff establishes a *prima facie* case of retaliatory discharge by showing (1) an employment relationship, (2) an on-the-job injury, (3) knowledge on the part of the employer of the on-the-job injury, and (4) subsequent termination of employment based solely upon the employee's on-the-job injury and the filing of a workers' compensation claim). Sparks has not provided substantive evidence showing Sunshine terminated him based solely upon his ankle injury and his workers' compensation claim. Moreover, no evidence demonstrates Sunshine's stated basis for his termination, his many production errors, was pretext for retaliation.

"entitled to the benefit denied." *Id.* To assert an FMLA retaliation claim, the employee must show that "he engaged in statutorily protected activity." *Id.* at 1297.

In order to receive FMLA protections, an employee must be both eligible, meaning having worked the requisite hours, and entitled to leave, meaning an employee has experienced a triggering event. *Pereda*, 666 F.3d at 1272. Nevertheless, because the FMLA requires notice in advance of future leave, employees are protected from interference prior to the occurrence of a triggering event. *Id.* at 1274. Thus, a pre-eligible employee has a cause of action if his employer terminates him in order to avoid having to accommodate that employee with rightful FMLA leave once the employee becomes eligible. *Id.* at 1275.

The FMLA requires employees to provide 30 days of advance notice of the leave, when the need to take leave is foreseeable. 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302(a). Although leave is foreseeable, if "30 days notice is not practicable, such as because of a lack of knowledge of approximately when the leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable." 29 C.F.R. § 825.302(a). "An employee is not required to assert expressly [his] right to take leave under the FMLA." *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005) (citing 29 C.F.R. §§ 825.302(c), 825.303(b)). The notice, however, "must be

14

sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." *Id.* (internal quotation marks omitted).

Sparks did not provide Sunshine with notice sufficient to make the company aware that he needed FMLA-qualifying leave. Sparks merely informed his supervisors that "it was looking like it was very possible [he was] going to have to have surgery." R. at 253. Sparks did not request leave or provide any information related to the timing or duration of any leave. At that point, it was possible Sparks would not need surgery and could continue working with no restrictions. Sparks did not know what type of surgery he possibly needed or if he even needed time off for surgery. Although Sparks relies on *Pereda* to support his argument, that case is distinguishable. *Pereda* concerned whether the FMLA protected an employee, who gave notice of her need for leave before she was eligible for FMLA leave, because she had not yet worked the requisite hours and had not experienced the triggering event, the birth of her child. *Pereda*, 666 F.3d at 1272. The key difference in *Pereda* is that the employee gave sufficient notice of her need for leave. She informed her employer she would be requesting FMLA leave after the birth of her child on or about November 30, 2009. *Id.* at 1271.

Because Sunshine was unaware Sparks needed or desired FMLA leave, Sparks has failed to establish Sunshine interfered with his rights under the statute

15

by terminating him before he could take FMLA leave.  For the same reason, Sparks has failed to establish Sunshine retaliated against him for engaging in a protected activity under the statute.  Because the evidence demonstrates Sunshine terminated Sparks's employment based on his poor performance, not in retaliation, the district judge did not err by granting summary judgment to Sunshine on Sparks's FMLA interference and retaliation claims.

**AFFIRMED.**